William Charles **BUNDREN** and Karen P. **Bundren, d/b/a C & K Residential Properties, New Hope Foundation, and Hope Hill Investments, Inc., Appellants and Cross–Appellees,**

v.

**HOLLY OAKS TOWNHOMES ASSOCIATION, INC., The Woods on Park Lane Homeowners Association, Royal Lane Highland Owners Association, Inc., and Dutch Creek Owners Association, Appellees and Cross–Appellants.**

No. 05–09–00788–CV.

Court of Appeals of Texas, Dallas.

Aug. 11, 2011.

Rehearing Overruled Sept. 12, 2011.

---

William Charles Bundren, WM. Charles Bundren, Esq., Frisco, TX, pro se.

David J. Potter, David J. Potter and Associates, Texarkana, TX, for Appellees.

Before Justices MARTIN RICHTER, LANG, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

William Charles Bundren[1] and Karen P. Bundren (collectively the Bundrens), doing business as C & K Residential Properties (C & K), New Hope Foundation (New Hope),[2] and Hope Hill Investments, Inc. (Hope Hill) appeal the trial court's judgment awarding Holly Oaks Townhomes Association, Inc. (Holly Oaks) $24,324 in damages and $73,000 for attorney's fees for trial and appeal. In four issues, appellants argue the trial court erred by (1) granting judgment for appellees for unpaid homeowner association (HOA) dues; (2) failing to grant judgment for appellants for excess payments of HOA dues, rents that were subject to a lien assigning rents, and property taxes; (3) failing to award appellants attorney's fees on the claims on which appellants prevailed at trial and by awarding Holly Oaks attorney's fees on claims on which it did not prevail at trial;

and (4) refusing to file findings of fact and conclusions of law requested by appellants. In a cross-appeal, appellees assert the trial court erred by failing to award all litigation costs and attorney's fees incurred by appellees. We affirm the trial court's judgment in part, reverse and render in part, and reverse and remand the issue of attorney's fees to the trial court.

## Procedural Background

Holly Oaks is a condominium property owners association. Pursuant to Holly Oaks' declaration, each owner of a condominium in the complex is required to pay monthly HOA dues. Holly Oaks sued appellants, alleging appellants were the "holders of legal title, and/or equitable titles, both in the past and at the present, of numerous condominium units" in the complex. Holly Oaks specifically asserted appellants were the holder of legal and/or equitable title relating to units 3, 6, 8, 9, 11, 21, 22, 32, 33, 36, 50, 51, and 60 and had failed to pay the required HOA dues for those units. Holly Oaks asserted claims based on debt, quantum meruit, unjust enrichment, and fraud and deceit. Appellants answered and asserted a counterclaim alleging that Holly Oaks performed work on the sewer line under unit 3 that prevented appellants from leasing the unit and caused appellants to incur repair costs. The Woods on Park Lane Homeowners Association (WOPL), Royal Lane Highland Owners Association, Inc. (Royal Lane), and Dutch Creek Owners Association (Dutch Creek), all condominium prop-

---

1. Many of the documents in this case reference Mr. Bundren by one or the other or both of his first two names. In referring to any specific document, we use the name in that document, but note there is no issue in this case about Mr. Bundren's identity.

2. Although named in both the trial court and in this Court as "New Hope Foundation," the

record indicates the complete name of this party is New Hope Foundation, Integrated Auxiliary of Dallas Theological Seminary. The complete name of that party is used in our judgment because the record reflects there are multiple entities in Texas that have a name that includes the words "New Hope Foundation."

erty owners associations, intervened in the lawsuit and asserted claims against appellants identical to those asserted by Holly Oaks based on appellants' ownership of units 711 and 728 at WOPL, unit 218 at Royal Lane, and unit 301 at Dutch Creek.

Appellees argued in the trial court that they were entitled to recover the unpaid HOA dues from appellants on a number of theories. First, appellees asserted they were entitled to recover based on fraud, quantum meruit, and unjust enrichment because appellants engaged in a scheme designed to disguise the ownership of a unit by transferring the unit between themselves. One of appellants would then sell the unit to a third party at an inflated price, but retain superior title to the unit through a deed of trust. When the third party failed to pay the required HOA dues, and presumably the payments due on the mortgage, appellants took possession of the unit without foreclosing the mortgage lien, rented the unit to a tenant, and then retained the rental income without paying the HOA dues. Appellees also asserted that appellants failed to foreclose on a unit for an extended period of time and did not pay HOA dues during the time period that appellants refused to foreclose.

Appellees' second theory involved the ability of Hope Hill and New Hope to conduct business as corporations. Hope Hill was incorporated on December 31, 1991, but forfeited its corporate charter on February 15, 1994. Hope Hill's corporate charter was not reinstated until April 16, 2009. New Hope was chartered in April 2002, but did not comply with all corporate formalities during the incorporation. Further, by February 10, 2006, New Hope had forfeited its corporate charter, which was not reinstated until November 20, 2008. Appellees argued that any deeds from Hope Hill or New Hope while the corpo-

rate entity was dissolved were void. Appellees also argued that, with respect to a number of the units, one of appellants executed a warranty deed to a third party when that appellant was not the actual legal owner of the unit. In an effort to correct the defects in the chains of title, appellants later filed deeds transferring the unit from the appellant who owned the unit to the appellant who had executed the deed to a third party. These deeds stated they were effective years earlier, well before the conveyance to the third party. Appellees contended these deeds were not effective until they were executed and filed of record.

Finally, appellees asserted that, pursuant to chapter 81 of the property code, entitled "Condominiums Created Before Adoption of Uniform Condominium Act" (the Condominium Act),[3] the seller or the buyer of a condominium unit is required to pay outstanding HOA dues at the time the unit is transferred. Accordingly, appellants, as the buyers or the sellers of any unit, were responsible for paying outstanding HOA dues.

The case was tried to the court beginning on May 5, 2008, but was continued for sixty days to allow appellants the opportunity to review the documents relied on by one of appellees' expert witnesses. Although the record does not reflect the reasons for the subsequent delay, the trial did not resume until April 20, 2009. On July 22, 2009, the trial court entered judgment that appellants were liable for outstanding HOA dues for seven of the units at Holly Oaks and for Dutch Creek unit 301 and Royal Lane unit 218. The trial court awarded no damages relating to the other units at Holly Oaks and the units at WOPL. The trial court also entered judgment for appellants on their counterclaim

---

3. *See* Tex. Prop. Code Ann. §§ 81.001–.210 (West 2007).

concerning Holly Oaks unit 3. The trial court ordered that Holly Oaks recover the net amount of $21,581 in damages plus attorney's fees of $68,000 for trial.[4] Both appellees and appellants filed motions for new trial.

On October 1, 2009, the trial court entered an amended final judgment that corrected a typographical error and addressed two additional units not mentioned in the original judgment. The trial court's final award to Holly Oaks of damages and attorney's fees for trial did not change, but the trial court awarded an additional $5,000 in attorney's fees for an appeal to this Court. Appellants filed a motion for new trial and both appellants and appellees filed requests for findings of fact and conclusions of law. On October 19, 2009, appellants filed a notice of appeal.

On October 27, 2009, the trial court entered a second amended judgment. The trial court reduced the amount awarded to appellants on their counterclaim, awarded Holly Oaks damages on a unit on which the trial court had previously found zero damages, increased the net amount awarded to Holly Oaks to $24,324, and awarded Holly Oaks the same attorney's fees as in the first amended judgment. On October 28, 2009, appellees filed a notice of appeal from the trial court's October 1 amended judgment.

Following the second amended judgment, appellants filed another motion for new trial, another request for findings of fact and conclusions of law, and an amended notice of appeal. On November 10, 2009, the trial court entered findings of fact and conclusions of law. The trial court found that appellees were all created before the effective date of the Texas Uniform Condominium Act (TUCA)[5] and were, therefore, governed by the Condominium Act. It also found that Hope Hill "forfeited its existence on February 15, 1994, and was dissolved pursuant to Section 7.12 of the Texas Business Corporation Act 12 months thereafter, namely, February 15, 1995, and remained dissolved and non-existent from February, 1995 until April 15, 2009." As to New Hope, the trial court found it:

> was chartered by the Texas Secretary of State on April 17, 2002. However, no organizational meeting was held. By laws were not adopted, nor was other action taken to operate the corporation as a corporation. Although the Articles of Incorporation state that the incorporator is acting under the Texas Non–Profit Corporation Act, the Application for Tax Exemption Status was Rejected. In addition, New Hope has never been qualified as a "503(c)(3) organization" under the I.R.S. Code. New Hope was not registered as a Public or Private Foundation with the I.R.S. prior to November 19, 2008.

Finally, the trial court found that a number of deeds relating to eleven of the condominium units at issue were invalid because "all of them were after the dissolution of [Hope Hill] by the comptroller pursuant to § 171.251 of the Texas Business Corporation Act in 1994 when the charter of [Hope Hill] was forfeited."

---

**4.** The trial court found appellants liable for unpaid HOA dues for Dutch Creek unit 301 and Royal Lane unit 218, but did not award any damages or attorney's fees to either Dutch Creek or Royal Lane. The record does not reflect whether appellees have an agreement regarding the allocation of damages and attorney's fees between Holly Oaks, Dutch Creek, and Royal Lane. However, neither Dutch Creek nor Royal Lane has complained on appeal about the trial court's award of damages and attorney's fees only to Holly Oaks.

**5.** *See* Tex. Prop.Code Ann. §§ 82.001–.064 (West 2007 and Supp. 2010).

As to the applicable law, the trial court concluded that, with the exceptions listed in section 82.002(d) of the property code, TUCA was not applicable to this case. However, sections 82.113 and 82.161 of TUCA were applicable and, along with the Condominium Act, gave appellees the right to enforce the payment of HOA dues and to be awarded reasonable attorney's fees.

The trial court concluded Hope Hill and New Hope were the alter egos of William Charles Bundren and Karen Bundren, including their partnership, C & K, and that William Bundren operated certain of the condominium units owned by his mother, Joyce Hudnall, and his sister, Deborah Bundren, for the benefit of himself, Karen Bundren, and C & K. The trial court also concluded that the owner of a condominium unit is responsible for the unit's share of common expenses. However, because the Condominium Act does not define the term "owner" as "apparent title owner," "legal title holder," or any other limited owner, the trial court concluded the term includes "all ownership interests comprising the fee simple ownership, including the legal and equitable title holders, unless specifically limited in the Declaration of the Association." According to the trial court, appellants, "as legal or equitable title holders, are liable [under the Condominium Act] for the past due condominium fees as 'Owners' and, also, may be liable under the facts of title history of each condominium property because all past due condominium fees are required to be paid under the Condominium Act (Sec. 81.208) at the time of sale by the 'Seller, and if not paid by the Seller, then by the Buyer.'"

Finally, the trial court concluded "back-dated" deeds filed by appellants were not effective prior to the execution and filing of the deeds and that all deeds and contracts from Hope Hill dated after Febru-

ary 14, 1994 were void and without effect pursuant to section 171.251 of the tax code and all deeds and contracts from Hope Hill dated after February 14, 1995 were void and without effect pursuant to article 7.01E of the corporation act.

On November 20, 2009, appellants requested additional, amended, and omitted findings of fact and conclusions of law. The trial court did not enter any additional findings of fact or conclusions of law.

## Ownership Issues

The trial court awarded damages to Holly Oaks for unpaid HOA dues relating to Holly Oaks units 8, 11, 21, 22, 32, 36, 51, and 60 as well as for Dutch Creek unit 301 and Royal Lane unit 218. It awarded damages to appellants on their counterclaim relating to Holly Oaks unit 3. The trial court awarded no damages relating to Holly Oaks units 6, 9, 33, or 50 or for WOPL units 711 or 728. However, at trial, appellees made no claim for damages as to Holly Oaks units 9, 33, and 50 and WOPL unit 711.

The chain of title for each specific unit is crucial to analyzing appellants' challenges to the trial court's judgment. However, to the extent possible, we will discuss groups of units that generally present the same issues, rather than addressing each unit individually.

The first group of units consists of Holly Oaks units 3, 8, 21, and 60 and Royal Lane unit 218. William Bundren, either individually or with Karen Bundren, acquired these units between 1989 and 1991. On December 31, 1991, the Bundrens transferred the units to Hope Hill. With the exception of Holly Oaks unit 3, after February 1, 1995, each of these units was sold to a third party. Contemporaneously with the sale of Holly Oaks units 8, 21, and 60 and Royal Lane unit 218, the Bundrens, doing business as C & K, transferred the

property to New Hope by gift deed. New Hope then transferred the property to the third party. At the time of the gift deeds, Hope Hill, not the Bundrens or C & K, was the record owner of the property. On November 17, 2008, Hope Hill filed a general warranty deed for each of these units transferring the unit from Hope Hill to the Bundrens, doing business as C & K. These deeds stated the effective date of the transfers was January 1, 1997.

The next group of units consists of Holly Oaks units 6, 9, 32, 50, and 51. William Bundren, Hudnall, or Deborah Bundren acquired these units in the early 1990s. Between 2002 and 2005, C & K or New Hope transferred each of these units to a third party. With regard to units 6 and 32, Hudnall filed a deed shortly after the transaction with the third party conveying each unit from Hudnall to C & K and stating the effective date of the transfer was January 1, 1997. On November 14, 2008, Deborah Bundren filed deeds transferring units 9, 50, and 51 to C & K, effective January 1, 1997.

Charles Bundren, Trustee [6] acquired Holly Oaks unit 11 in 1998. In 2003, New Hope executed a warranty deed transferring unit 11 to a third party. Three days later, the Bundrens, doing business as C & K, executed a gift deed transferring the unit to New Hope. Hope Hill acquired Holly Oaks unit 33 in 1995. The Bundrens, doing business as C & K, executed a gift deed for unit 33 to New Hope in 2003. New Hope then transferred the unit to a third party. New Hope owned neither unit 11 nor unit 33 at the time of the transfer of each unit to the third party. On November 17, 2008, (1) Charles Bundren, Trustee, filed a deed transferring unit 11 to the Bundrens, doing business as

C & K, and stating the effective date of the transfer was January 1, 1999, and (2) Hope Hill filed a deed transferring unit 33 to the Bundrens, doing business as C & K, and stating the effective date of the transfer was January 1, 1997.

Hope Hill acquired Holly Oaks unit 22 in 1993. Hope Hill executed a warranty deed transferring unit 22 to a third party in 2002. Hope Hill foreclosed on its deed of trust in 2004, and C & K purchased the property. C & K sold the property to another party in 2005, but subsequently foreclosed on the deed of trust given for that transaction.

William Charles Bundren acquired Holly Oaks unit 36 in 1990. William and Karen Bundren transferred the unit to Hope Hill on December 31, 1991. On March 16, 2002, Hope Hill filed a warranty deed conveying the unit to C & K effective January 2, 1997. That same day, C & K conveyed the unit to a third party. On November 17, 2008, Hope Hill filed a general warranty deed transferring the unit to the Bundrens, doing business as C & K. The deed stated the effective date of the transfer was January 1, 1997.

William Bundren acquired Dutch Creek unit 301 and WOPL unit 711 in 1990. On December 31, 1992, William and Karen Bundren transferred the units to Hope Hill. Hope Hill transferred unit 301 to a third party in 2002 and transferred unit 711 to C & K in 2005. C & K then transferred unit 711 to a third party. On November 17, 2008, Hope Hill filed deeds transferring the units to the Bundrens, doing business as C & K. The deeds stated the effective date of the transfers was January 1, 1997. On March 19, 2009, the Bundrens, doing business as C & K, filed a

6. The record does not reflect the entity or person for whom Charles Bundren was acting as trustee.

general warranty deed transferring unit 301 to Hope Hill. The deed stated the effective date of the transfer was January 18, 2002.

The retirement plan of the law firm where William Bundren practiced law acquired WOPL unit 728 in 1990. The retirement plan conveyed the unit to Hope Hill in 1992. In 2003, the Bundrens, doing business as C & K, executed a gift deed transferring the unit to New Hope. New Hope then conveyed the property to a third party. Four days later, Hope Hill filed a general warranty deed conveying the property to the Bundrens, doing business as C & K. The deed stated the transfer was effective January 1, 1997.

Whenever a unit was conveyed to a third party, one of appellants financed the sale through a deed of trust. Appellants eventually foreclosed on most of these units. At the time trial continued in April 2009, appellants held the legal title to all the units other than Holly Oaks unit 11 and WOPL unit 711.

## Unpaid HOA Dues

In their first issue, appellants argue, in subsections (a) through (j), that the trial court erred by entering judgment for appellees for unpaid HOA dues because (a) banks, mortgagees, other lenders, and a trustee under a deed of trust are not legally responsible for HOA dues owed by their borrowers; (b) a person who holds equitable title in a condominium unit as security for an obligation is not legally responsible for unpaid HOA dues; (c) the trial court erroneously concluded that only limited sections of TUCA are applicable to this case; (d) unjust enrichment and quantum meruit are invalid legal theories to support the trial court's judgment; (e) fraud is an invalid legal theory to support the judgment because appellants lawfully sold their property to third parties, and appellees

have no standing to complain; (f) appellees' technical defect, or void and defective deeds, legal theory was excluded by the trial court and therefore will not support the judgment, appellees have no standing to complain about deeds to which they were not parties, and New Hope and Hope Hill later ratified and adopted all actions of their officers, directors, and sole shareholder taken during the time the corporations were unable to act; (g) appellees did not disclose their theory under section 81.208 of the property code that appellants, as the buyer or seller of the condominium units, were responsible for the payment of outstanding HOA dues and, therefore, the trial court's reliance on this theory is improper and the theory is also improper under TUCA and Texas law; (h) the trial court's legal conclusions regarding New Hope and Hope Hill as corporate Texas entities are erroneous, immaterial, and not relevant; (i) the conclusive evidence established appellants paid the HOA dues for each unit that was owned by appellants and that appellants overpaid their dues; and (j) there is no evidence to support the amount of damages awarded as to each separate unit and the trial court awarded damages owed by parties other than appellants.

### Standard of Review

Appellants have not specifically challenged the sufficiency of the evidence to support any of the trial court's findings of fact. Rather, we construe appellants' arguments in their first issue as challenges to the trial court's conclusions of law. In a case tried to the court, findings of fact have the same force and effect as jury findings. *Walker v. Anderson*, 232 S.W.3d 899, 907 (Tex.App.-Dallas 2007, no pet.). Unchallenged findings of fact are binding on the appellate court, unless the contrary is established as a matter of law or there is

no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986); *Walker*, 232 S.W.3d at 907. We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Walker*, 232 S.W.3d at 908. We independently evaluate the trial court's conclusions of law to determine whether the trial court correctly drew the legal conclusions from the facts. *Walker*, 232 S.W.3d at 908; *see also BMC Software*, 83 S.W.3d at 794. We must uphold the trial court's conclusions of law if "any legal theory supported by the evidence sustains the judgment." *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 736 (Tex.App.-Dallas 2007, pet. denied). We will reverse the trial court's judgment only if the conclusions are erroneous as a matter of law. *Id.*

### Failure to Disclose Legal Theories

We turn first to appellants' argument in subsections (f) through (h) of their first issue that the trial court erred by entering judgment for appellees on the basis that (1) deeds issued by Hope Hill and New Hope during the time period that they had forfeited their corporate charters were void, or (2) the Condominium Act required appellants to pay outstanding HOA dues at the time a unit was bought or sold, because appellees failed to disclose these legal theories in their pleadings or in their discovery responses.

Appellants initially raise a procedural argument that the trial court ruled it would not allow appellees' theory that deeds executed by Hope Hill and New Hope during the time period their corporate charters were forfeited were void because appellees failed to disclose that theory. Therefore, appellants contend, the trial court erred by relying on that theory in entering judgment for appellees. Our review of the record reflects the trial court indicated that it would not allow a theory that had not been pleaded. The trial court granted appellants' request for a running objection to all evidence pertaining to whether the deeds were void and repeatedly assured appellants' counsel the issue was not being tried by consent. However, the trial court also repeatedly stated it needed to review the pleadings to determine whether the theory had been pleaded. Accordingly, we do not agree with appellants that the trial court clearly ruled that appellees could not rely on the theory that the deeds were void.

 We next turn to appellants' substantive argument that the trial court erred by entering judgment for appellees based on either of the complained-about theories because appellees failed to plead either theory. Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex.2000); *see also* Tex.R. Civ. P. 47(a) (a pleading "shall contain ... a short statement of the cause of action sufficient to give fair notice of the claim involved"); *James v. Comm'n for Lawyer Discipline*, 310 S.W.3d 598, 608 (Tex.App.-Dallas 2010, no pet.). The fair notice pleading standard serves to give the opposing party information sufficient to enable him to prepare a defense. *Auld*, 34 S.W.3d at 897. However, it also relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity. *James*, 310 S.W.3d at 608; *Bowen v. Robinson*, 227 S.W.3d 86, 91 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). In determining whether a pleading is adequate, we examine whether an opposing attorney of reasonable competence, on review of the

pleadings, can ascertain the nature and the basic issues of the controversy. *James,* 310 S.W.3d at 608; *Bowen,* 227 S.W.3d at 91. When, as here, no special exceptions are filed, we construe pleadings liberally in favor of the pleader. *Auld,* 34 S.W.3d at 897.

Appellants assert that appellees pleaded only that appellants, as the holder of equitable title under a deed of trust, were liable for the HOA dues. However, appellees pleaded that appellants were the legal and/or equitable owners of the units, had the duty to pay the HOA dues, and failed to pay the required dues and sought to recover the unpaid HOA dues under theories of debt, quantum meruit, unjust enrichment, and fraud. After construing appellees' pleading liberally in their favor, we conclude the pleadings gave appellants fair notice of the nature and basic issues of the controversy.

Appellants also contend that appellees failed to disclose the complained-about legal theories in their responses to discovery. Appellants propounded both interrogatories and requests for disclosures inquiring about appellees' contentions and about the legal theories and factual bases for appellees' claims. Appellees' responses simply referred appellants to appellees' pleadings. Appellants assert that, due to appellees' inadequate responses to discovery, the trial court was required by rule of civil procedure 193.6 to exclude any evidence that the deeds were void.

Texas Rule of Civil Procedure 193.6 states that a "party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed" in the absence of good cause and a finding by the trial court that the failure to make, amend, or supplement the response "will not unfairly surprise or unfairly prejudice the other parties." Tex.R. Civ. P. 193.6(a). The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence. Tex.R. Civ. P. 193.6(b).

While, absent proof of good cause or lack of unfair surprise or prejudice, the failure to completely respond to discovery requests results in the automatic exclusion of non-disclosed evidence, "properly pled claims for affirmative relief, as opposed to withheld evidence, are not abandoned or waived by a party's failure to expressly identify those claims" in response to a discovery request. *Concept Gen. Contracting, Inc. v. Asbestos Maint. Servs., Inc.,* No. 07–10–00332–CV, 2011 WL 2792390, at *3 (Tex.App.-Amarillo July 18, 2011, no pet. h.) (citing *Killam Ranch Props., Ltd. v. Webb Cnty.,* No. 04–08–00105–CV, 2008 WL 4958452, at *1–2 (Tex.App.-San Antonio Nov. 19, 2008, no pet.) (mem. op.) ("[t]here is nothing in the case law linking a failure to respond to discovery to an abandonment of a claim")). Appellees' pleadings provided notice they sought recovery of unpaid HOA dues from appellants as either the legal or equitable owner of the condominium units under the theories of debt, quantum meruit, unjust enrichment, and fraud. The record reflects appellees produced all records pertaining to the chain of title for each unit to appellants and that appellants did not object to the introduction of this evidence underlying appellees' legal theories. On this record, appellees did not waive the right to request that the trial court consider all applicable law by failing to specifically identify relevant statutes in their discovery responses. *See id.* We overrule subsections (f) through (h) of appellants' first issue to the extent appellants complain the trial court's judgment was based on an undisclosed legal theory.

### Void and Ineffective Deeds

Appellants argue that the trial court's judgment cannot be upheld based on the theory that appellants remained the legal owner of some of the units because deeds executed by Hope Hill and New Hope during the time period their corporate charters were forfeited were void or the entity that conveyed the property was not the legal owner of the property and the backdated deeds intended to cure the defects in the chains of title were not effective until they were executed and filed. Appellants do not dispute that the legal owner of a condominium unit is responsible for paying the assessed HOA dues. *See* TEX. PROP.CODE ANN. § 82.113 (assessment levied against unit or unit owner "is a personal obligation of the unit owner").[7]

■ An appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(i). Appellate courts must construe the Texas Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule. *Republic Underwriters Ins. Co. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427 (Tex.2004); *see* Tex. R.App. P. 38.9. However, an issue on appeal that is not supported by argument or citation to legal authority presents nothing for the court to review. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994); *Birnbaum v. Law Offices of G. David Westfall*, 120 S.W.3d 470, 477 (Tex.App.-Dallas 2003, pet. denied).

The only arguments made by appellants in their brief under subsections (f) through (h) of their first issue is that appellees failed to disclose the complained-about legal theories and that a foreclosure sale is not a transfer of a unit that would require the payment of outstanding HOA dues under section 81.208 of the Condominium Act. Although appellants also included in their statement of the issues in subsections (f) through (h) of their first issue that the trial court erred by entering judgment based on void or ineffective deeds because (1) appellees do not have standing to complain about deeds to which appellees were not parties, (2) New Hope and Hope Hill later ratified and adopted all actions of their officers, directors, and sole shareholder taken while the corporations were unable to act, and (3) the trial court's legal conclusions regarding Hope Hill and New Hope as corporate Texas entities are erroneous, immaterial, and not relevant to the issue before the trial court, appellants failed to brief these complaints. Therefore, appellants have waived any argument that the trial court erred by entering judgment based on appellants remaining the legal owner of any unit that was purportedly conveyed by a void or ineffective deed. *See* TEX.R.APP. P. 38.1(i); *Lundy v. Masson*, 260 S.W.3d 482, 503 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (concluding that appellant failed to provide argument or cite authority for contention on appeal and appellate court was "not required to do the job of the advocate").

Holly Oaks units 8, 21, 36, and 60, Dutch Creek unit 301, and Royal Lane unit 218 were transferred to Hope Hill on December 31, 1991.[8] Hope Hill acquired Holly

---

7. Section 82.113 of TUCA applies to a condominium regime governed by the Condominium Act. TEX. PROP CODE ANN. § 82.002(c).

8. Holly Oaks unit 3 and WOPL units 711 and 728 were also transferred to Hope Hill on December 31, 1991. Hope Hill acquired Holly Oaks unit 33 in 1995. Because the trial court awarded no damages for unpaid HOA dues on these units and appellees have not

Oaks unit 22 in 1993. Hope Hill was the legal owner of all these units when it forfeited its corporate charter on February 15, 1994 and the trial court concluded any attempted transfer of these units by Hope Hill while its corporate charter was forfeited was void. Based on the trial court's unchallenged findings and conclusions, Hope Hill or its shareholders held legal title of these units during the time period the disputed HOA dues were not paid.

Charles Bundren, Trustee, acquired Holly Oaks unit 11 in 1998. In June 2003, Charles and Karen Bundren, doing business as C & K executed a gift deed relating to unit 11 to New Hope, and New Hope executed a warranty deed to a third party. Charles Bundren, Trustee, not the Bundrens, doing business as C & K or New Hope, was the record title owner at the time the deed to the third party was executed. In November 2008, appellants filed a warranty deed transferring the property from Charles Bundren, Trustee, to Charles and Karen Bundren, doing business as C & K. The deed stated it was effective January 1, 1999. The trial court concluded this deed was not effective until it was executed and filed. Accordingly, based on the trial court's unchallenged findings and conclusions, Charles Bundren, Trustee, remained the legal owner of the property during the time period the disputed HOA dues were not paid.

Deborah Bundren acquired Holly Oaks unit 51 in 1995.[9] C & K executed a warranty deed for the unit to a third party in 2005. C & K was not the record owner of the property at the time it executed the deed. In November 2008, appellants filed a general warranty deed transferring the property from Deborah Bundren to C & K. The deed stated the transfer was effective January 1, 1997. The trial court concluded this deed was not effective until it was executed and filed. The trial court also concluded that William Bundren was the alter ego of Deborah Bundren and operated this unit for his, Karen Bundren's, and C & K's benefit., and appellants have not challenged this conclusion on appeal. Based on the trial court's unchallenged findings and conclusions, Deborah Bundren, William Bundren's alter ego, remained the legal owner of the property during the time period the disputed HOA fees were not paid.

We conclude the trial court's judgment as to Holly Oaks units 8, 11, 21, 22, 36, 51, and 60, Dutch Creek unit 301, and Royal Lane unit 218 can be upheld based on appellants, or an alter ego of appellants, being the legal owner of these units during the time period the HOA dues were not paid. Accordingly, we need not consider appellants' remaining arguments in subsections (a) through (h) as to these units. We overrule subsections (a) through (h) of appellants' first issue as to Holly Oaks units 8, 11, 21, 22, 36, 51, and 60, Dutch Creek unit 301, and Royal Lane unit 218.

### Holly Oaks Unit 32

The only remaining unit for which the trial court awarded damages for unpaid HOA dues is Holly Oaks unit 32. Hudnall acquired unit 32 in 1992. In 2002, C & K transferred the unit to a third party.

---

challenged the trial court's failure to do so, we need not address those units here.

9. Charles Bundren acquired Holly Oaks unit 6 in 1992 and transferred it to Hudnall approximately eight months later. Charles Bundren acquired Holly Oaks unit 9 in 1991 and transferred it to Deborah Bundren approxi-

mately two weeks later. Deborah Bundren also acquired Holly Oaks unit 50 in 1992. Because the trial court did not award any damages based on unpaid HOA dues on any of these units and appellees have not challenged the trial court's failure to do so, we do not address those units here.

Shortly thereafter, Hudnall executed a deed transferring the unit to C & K effective January 1, 1997. Based on the trial court's conclusions of law, this deed was effective when executed and filed, and the third party became the legal owner of unit 32 in 2002.

The third party did not pay HOA dues and, in June 2005, Holly Oaks foreclosed on its assessment lien and sold the unit to Harold Simmons. The amount paid by Simmons for the unit was sufficient to pay Holly Oaks all outstanding HOA dues. Simmons's title was subject to the mortgage lien held by C & K under the note secured by the deed of trust given by the original purchaser. Simmons testified he and William Bundren attempted to negotiate the amount Simmons could pay to satisfy the mortgage debt on the unit, but the two could not reach an agreement. Simmons stated he believed New Hope owned the mortgage and had foreclosed on its lien and, therefore, he did not pay HOA dues on unit 32. In September 2006, Holly Oaks foreclosed on its assessment lien against Simmons and became the owner of unit 32. In June 2008, C & K foreclosed on its deed of trust given by the original purchaser. The trial court awarded damages to Holly Oaks based on unpaid HOA dues from July 2005 through September 2006, the time period during which Simmons owned the unit.

There was no deed from either Hope Hill or New Hope in the chain of title for unit 32 that would be considered void under the trial court's conclusions of law. Further, the only backdated deed for unit 32 was in 2002 and, according to the trial court's conclusions of law, was effective when executed and filed. Therefore, appellants were not the legal owners of the

unit at the time the disputed HOA dues were not paid, and the trial court's judgment cannot be upheld based on appellees' theory of void or ineffective deeds. We sustain subsections (f) and (h) of appellants' first issue as it pertains to Holly Oaks unit 32.

Appellants next contend in subsection (g) of their first issue that the trial court's judgment cannot be sustained based on section 81.208 of the Condominium Act. Section 81.208 of the Condominium Act provides that if a condominium is sold and there are unpaid assessments against the apartment, the apartment owner shall pay the assessments out of the sales price or the purchaser shall pay the assessment. TEX. PROP.CODE ANN. § 81.208. The unpaid assessments have priority over any other charges against the property except for taxes and an obligation under a validly recorded mortgage. *Id.* The only purchase or sale of unit 32 after the disputed HOA dues became due and that involved appellants was C & K's purchase of the unit at the foreclosure sale in June 2008. Appellants argue that (1) section 81.208 does not apply to a foreclosure sale, and (2) TUCA applies to this case and defines a "purchaser" to be a person who acquires title to the property by means of a voluntary transfer, which would not include a foreclosure sale.[10]

■ Section 12 of Holly Oaks' declaration states that a purchaser acquiring title to a unit at a foreclosure sale,

> whomever he may be, and his successors and assigns, shall not be liable for the share of the unpaid common expenses or assessments by the Association chargeable to such unit, which became due prior to acquisition of such title at such

---

10. We express no opinion as to whether this definition in TUCA applies to a condominium regime governed by the Condominium Act.

foreclosure sale, but such unpaid share of common expenses or assessments shall be deemed to be common expenses collectable from all owners, including such purchaser.

A declaration is "the instrument that establishes property under a condominium regime." TEX. PROP.CODE ANN. § 81.002(5). The declaration forms a contract between the homeowners association and the condominium unit owners. *Allan v. Nersesova*, 307 S.W.3d 564, 570 (Tex.App.-Dallas 2010, no pet.) ("Restrictions in a condominium declaration form a contract between the parties."); *Hodges v. Canyon Creek Ridge No. 1 Homeowners Ass'n, Inc.*, No. 05–00–01848–CV, 2002 WL 418201, at \*3 n. 4 (Tex.App.-Dallas Mar. 19, 2002, no pet.) (not designated for publication); *see also Jakab v. Gran Villa Townhouses Homeowners Ass'n.* 149 S.W.3d 863, 867 (Tex. App.-Dallas 2004, no pet.) (applying rules of contract interpretation to condominium declaration). Therefore, regardless of whether section 81.208 generally applies to the purchase of a condominium unit at a foreclosure sale, Holly Oaks agreed that it would not seek to hold the purchaser of a unit at a foreclosure sale personally liable for all the outstanding HOA dues. *See Allan*, 307 S.W.3d at 570 ("By accepting a deed to a condominium unit, the unit owner accepts the terms, conditions, and restrictions in the declaration."). Accordingly, Holly Oaks cannot seek to hold C & K liable under section 81.208 of the property code for all HOA dues that were outstanding when C & K acquired the property at the foreclosure sale in June 2008. We sustain subsection (g) of appellants' first issue as it pertains to Holly Oaks unit 32.

■ Appellants next argue in subsections (a) through (c) of their first issue that the trial court erred by concluding the holder of equitable title in a unit under a deed of trust can be liable for unpaid HOA dues because (1) lenders are not legally responsible for the HOA dues owed by their borrowers, (2) the trial court's conclusion that the owner of equitable title is an owner responsible for homeowners due contradicts TUCA and the condominium declarations, and (3) the trial court erroneously concluded that only limited sections of TUCA are applicable to this case. The trial court did not conclude the holder of equitable title under a deed of trust was liable for unpaid HOA dues. Rather, the trial court concluded the Condominium Act did not define or limit the "owner" of a unit to the holder of legal title. The trial court further concluded that " 'Owner' consists of all ownership interests comprising the fee simple ownership, including the legal and equitable title holders, unless specifically limited in the Declaration of Association." Holly Oaks' declaration defines an "owner" as a:

> person, firm, corporation, partnership, association, trust, or other legal entity, or any combination thereof, who owns a unit or units within the condominium project and shall include any purchaser at a foreclosure under a deed of trust or other lien, but shall not include a trustee under a deed of trust.

Holly Oaks' declaration specifically excludes the trustee under a deed of trust from the definition of owner. Accordingly, C & K, as the trustee under the deed of trust for Holly Oaks unit 32, is not an owner that would be liable for HOA dues, and the trial court's judgment as to unit 32 cannot be upheld on this theory. Because the Holly Oaks' declaration limits the definition of "owner," we need not consider appellants' other arguments under subsections (a) through (c) of their first issue and express no opinion as to whether the Condominium Act allows the holder of equitable title as a trustee under a deed of trust to be held liable for unpaid HOA dues. We sustain subsections (a) through (c) of

appellants' first issue as it pertains to Holly Oaks unit 32.

In subsections (d) and (e) of their first issue, appellants contend they are not liable for the unpaid HOA dues based on the theories of unjust enrichment, quantum meruit, or fraud. The only finding by the trial court pertaining to these theories of recovery was that the activities of the Bundrens "in dealing with the properties involved in this suit were done in an unjust and inequitable manner and for the purpose, among others, of evading the payment of their fair share of their pro rata common expenses for these units."

As relevant to these equitable theories, appellees alleged that appellants engaged in a scheme designed to hide the true ownership of a unit and to avoid the payment of HOA dues. Appellees' theory was premised on actions by appellants in selling a unit to an unqualified buyer for more than the market value of the unit and retaining equitable title through a vendor's lien. When the buyer did not pay the HOA dues, and presumably the mortgage payment, appellants, without foreclosing on the unit, would take possession of and rent the unit. Appellants would then keep the rent without paying the HOA fees.

Although appellants may have engaged in this conduct as to other units, the record does not reflect they did so as to Holly Oaks unit 32. Unit 32 was not transferred repeatedly among appellants in an effort to disguise the true ownership of the unit. Rather, in March 2002, it was transferred from Hudnall to C & K and then to a third party. The record does not reflect whether the purchaser of unit 32 was qualified to purchase the property or whether the unit was sold for much more than its fair market value. However, the purchaser paid HOA dues, although not consistently, through August 2004. After the purchaser stopped paying HOA dues, Holly Oaks foreclosed its assessment lien on the unit and sold the unit to Simmons. The price paid by Simmons was sufficient to satisfy all outstanding HOA dues on unit 32. The trial court awarded damages based on the time period Simmons owned unit 32. The record does not reflect that during that time period appellants took possession of unit 32 and rented it without paying HOA dues.

Appellees failed to establish any misrepresentation by appellants to appellees regarding unit 32 that caused injury to appellees. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001) (elements of fraud claim include a material misrepresentation which caused injury); *Marshall v. Kusch*, 84 S.W.3d 781, 785 (Tex.App.-Dallas 2002, pet. denied) (misrepresentation must reach relying party and influence his conduct). Further, appellees failed to establish appellants were unjustly enriched by receiving rents or services for unit 32 during the time period that Simmons owned the unit. *See Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (one element of quantum meruit is that person sought to be charged accepted, used, and enjoyed the services or materials); *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 817 (Tex.App.-Dallas 2003, pet. denied) ("Quantum meruit is an equitable theory of recovery founded in the principle of unjust enrichment based on an implied agreement to pay for benefits received."). The damages awarded by the trial court have no connection with appellants' purchaser's qualifications or lack thereof or with any action or scheme by appellants in selling the unit. Therefore, the trial court's judgment as to Holly Oaks unit 32 cannot be upheld based on appellees' fraud, unjust enrichment, or quantum meruit theories. We sustain sub-

sections (d) and (e) of appellants' first issue as they pertain to Holly Oaks unit 32.

Because the trial court's judgment as to Holly Oaks unit 32 cannot be sustained on any legal theory advanced by appellees, we reverse the trial court's judgment for appellees based on their claims relating to Holly Oaks unit 32 and render judgment that appellees take nothing based on their claims relating to Holly Oaks unit 32.

### Damages

In subsections (i) and (j) of their first issue, appellants argue the trial court erred in its damages calculations. Appellants specifically contend they paid the HOA dues for each month they owned a unit and that the trial court awarded HOA dues that were the responsibility of third parties. As discussed above, appellants have failed to adequately brief whether the trial court erred by determining that appellants remained the legal owner of Holly Oaks units 8, 11, 21, 22, 36, 51, and 60, Dutch Creek 301, and Royal Lane 218 due to void and ineffective deeds. The record reflects the trial court awarded damages for these units based on unpaid HOA dues for time periods during which appellants were the legal owner of the units. Accordingly, we overrule subsections (i) and (j) of appellants' first issue as to Holly Oaks units 8, 11, 21, 22, 36, 51, and 60, Dutch Creek 301, and Royal Lane 218. However, because the trial court erred by finding appellants liable for unpaid HOA dues on Holly Oaks unit 32, we sustain subsections (i) and (j) of appellants' first issue as they pertain to unit 32.

With the exception of that portion of the judgment based on unpaid HOA dues for Holly Oaks unit 32, we overrule appellants' first issue.

### Overpayments by Appellants

In their second issue, appellants assert the trial court erred by failing to grant judgment to appellants for their overpayment of HOA dues, rents collected that were subject to a lien assigning rents, and for property taxes appellants paid when appellees owned certain condominium units.

As to the HOA dues and property taxes on Holly Oaks units 8, 11, 21, 22, 36, 51, and 60, Dutch Creek 301, and Royal Lane 218, appellants waived any challenge to the trial court's findings and conclusions that appellants remained the legal owner of the units during the time period Hope Hill's and New Hope's corporate charters were forfeited. Accordingly, appellants were responsible for both the HOA dues and the property taxes during that time period.

With regard to appellants' claim they were entitled to recover rent for Holly Oaks unit 60, appellants did not seek to recover this rent in their fourth amended counterclaim. Accordingly, the trial court did not err by failing to grant judgment to appellants on this claim. *See Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex.1983) ("a party may not be granted relief in the absence of pleadings to support that relief.").

We finally turn to property taxes that appellants paid on Holly Oaks unit 32 when Holly Oaks was the legal owner of that unit. Holly Oaks foreclosed on its assessment lien against Simmons on September 11, 2006. Holly Oaks' title was subject to the mortgage lien held by C & K. C & K paid property taxes for Holly Oaks unit 32 on January 31, 2008. C & K foreclosed on its mortgage lien on June 4, 2008. Appellants assert Holly Oaks is liable to C & K for the property taxes under the doctrine of equitable subrogation.

## Standard of Review

■ We review a trial court's ruling on the expediency, necessity, or propriety of providing equitable relief for an abuse of discretion. *Wagner & Brown, Ltd. v. Sheppard,* 282 S.W.3d 419, 428–29 (Tex. 2008); *Bank of Am. v. Babu,* 340 S.W.3d 917, 922 (Tex.App.-Dallas 2011, no pet. h.). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

## Equitable Subrogation

■ The doctrine of equitable subrogation prevents unjust enrichment when one person confers upon another a benefit that is not required by legal duty or contract. *Smart v. Tower Land & Inv. Co.,* 597 S.W.2d 333, 337 (Tex.1980). A payor who confers a benefit as a "mere volunteer" is not entitled to the remedy of equitable subrogation. *Id.* Therefore, the "party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief." *Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Intern., Ltd.,* 259 S.W.3d 140, 142 (Tex. 2008). A payment is voluntary when the payor acts "without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property." *Id.* at 145 (quoting *First Nat'l Bank of Kerrville v. O'Dell,* 856 S.W.2d 410, 415 (Tex.1993)). A person who pays property taxes assessed on property owned by another may be entitled to subrogation to the taxing authority's lien either by statute or by express agreement. *Smart,* 597 S.W.2d at 338. A mortgagee's interest in the security of his mortgage makes him more than a "mere volunteer" when he pays taxes owed by the mortgagor. *Id.*

Even if C & K did not "voluntarily" pay the property taxes on unit 32, appellants were also required to show that "the circumstances of the case favor equitable relief." *Frymire Eng'g,* 259 S.W.3d at 146; *Babu,* 340 S.W.3d at 925. On June 6, 2006, C & K filed an "Assignment Affidavit" indicating its mortgagors had defaulted on their obligations under the deed of trust and that C & K was asserting a right to any rents collected by Holly Oaks relating to unit 32. C & K, therefore, put Holly Oaks in the position of being unable to use any rent from the unit to pay outstanding HOA dues and the property taxes. Based on our review of the record, we conclude the trial court, after balancing the equities, did not abuse its discretion by refusing to award appellants the property taxes paid on unit 32 on January 31, 2008.

We overrule appellants' second issue.

## Additional Findings of Fact and Conclusions of Law

In their fourth issue, appellants argue the trial court erred by failing to file "proper findings of fact and conclusions of law that conformed to the evidence presented at trial and the legal theories" disclosed by appellees. Appellants argue that the "findings of fact and [sic] are not legally and factually sufficient for the reasons set forth in detail in this Brief," "do not conform to the evidence presented at trial," and "[t]here is insufficient evidence to support the district court's factual findings." [11] Appellants also argue the trial court's "legal conclusions are erroneous and the conclusions as to the applicability

---

11. We note, however, that appellants failed to challenge on appeal the sufficiency of the evidence to support any specific finding of fact.

of TUCA are error" and that the trial court "erred in concluding that [appellants] were not prevailing parties and, thus, not entitled, as a conclusion of law, to attorney's fees." Appellants' arguments under this issue simply incorporate their arguments under other issues, and we will not repeat our analysis of those arguments here. Appellants' fourth issue is overruled.

### Attorney's Fees and Litigation Costs

In their third issue, appellants contend the trial court erred by refusing to grant appellants attorney's fees for claims they prevailed upon at trial and by granting attorney's fees to appellees on claims on which they did not prevail at trial. Appellees filed a cross-appeal arguing the trial court erred by failing to award appellees all their litigation costs. Appellees contend that sections 82.113 and 82.161 of TUCA[12] and rule of civil procedure 131 allow them to recover all collection costs, including expert witness fees and expenses and attorney's fees, incurred in seeking to recover the unpaid HOA dues from appellants. Section 82.113(a) defines an "assessment" as:

> regular and special assessments, dues, fees, charges, interest, late fees, fines, collection costs, attorney's fees, and any other amount due to the association by the unit owner or levied against the unit by the association, all of which are enforceable as assessments under this section unless the declaration provides otherwise.

Section 82.161 of TUCA provides that the prevailing party in an action to enforce the condominium regime's declaration, bylaws, or rules is entitled to recover reasonable attorney's fees and "costs of litigation" from the nonprevailing party. Texas rule of civil procedure 131 allows the successful party to recover "all costs" incurred in the litigation. TEX.R. CIV. P. 131. Appellees contend these provisions mandate that the trial court award all fees and expenses incurred in this litigation.

### Jurisdiction

Appellants argue we do not have jurisdiction over the cross-appeal because appellees appealed from the October 1, 2009 amended judgment. Appellants assert the October 27, 2009 second amended judgment vacated the amended judgment, and appellees failed to appeal from the second amended judgment. However, when a judgment in a civil case has been appealed and the trial court modifies the judgment and replaces it with another appealable judgment, we must treat the appeal as from the subsequent judgment. TEX. R.APP. P. 27.3; *see also Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 923–25 (Tex. 2011); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 633–34 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (concluding appellants properly perfected appeal when appellants timely filed their notice of appeal after original judgment, trial court modified final judgment, and appellants did not file another notice of appeal from modified final judgment). We must, therefore, treat appellees' appeal from the October 1, 2009 amended judgment as an appeal of the October 27, 2009 second amended judgment. Accordingly, we have jurisdiction and will consider appellees' arguments in their cross-appeal.

### Expert Witness Fees and Expenses

 Appellees requested $77,537.50 for expert witness fees and $4,880.64 in expenses incurred by the expert witnesses.

---

12. Sections 82.113 and 82.161 of TUCA are applicable to a condominium regime governed by the Condominium Act. *See* TEX. PROP.CODE ANN. § 82.002(c).

Generally, whether a particular expense is permitted by statute or rule to be recoverable as costs is a question of law subject to de novo review. *Ferry v. Sackett,* 204 S.W.3d 911, 912 (Tex.App.-Dallas 2006, no pet.).

■■■■ "Costs" usually refers to fees and charges required by law to be paid to the courts or their officers, the amount of which is fixed by statute or rule. *Sterling Bank v. Willard M, L.L.C.,* 221 S.W.3d 121, 125 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Costs are not recoverable unless they are expressly provided for by statute, rule, or under principles of equity. *Ferry,* 204 S.W.3d at 912. "Normally, expert fees necessary to establish an evidentiary matter are not 'costs.'" *Adams v. Stotts,* 667 S.W.2d 798, 801 (Tex.App.-Dallas 1983, no writ); *see also Wilson v. Whetstone,* No. 03–08–00738–CV, 2010 WL 1633087, at *12, 13 (Tex.App.-Austin Apr. 20, 2010, pet. denied) (mem. op.) (costs for survey prepared by expert witness not appointed by court not recoverable as costs under section 37.009 of the civil practice and remedies code); *Griffin v. Carson,* No. 01–08–00340–CV, 2009 WL 1493467, at *7 (Tex.App.-Houston [1st Dist.] May 28, 2009, pet. denied) (mem. op.) ("It is well-settled that, 'regardless of any good cause shown, costs of experts are merely incidental expenses in preparation for trial and not recoverable.'").

■■■ The general rule in Texas is that expert witness fees are not recoverable as costs of litigation. *Ferry,* 204 S.W.3d at 912. Expert witness fees are generally not included in "costs" under rule 131. *Adams,* 667 S.W.2d at 800–01. Further, section 82.113 of the property code does not reference "litigation costs" and section 82.161 of the property code does not specify what is included in "costs of litigation." Because there is no statute or rule pertaining to the subject matter of this suit that authorizes the recovery of expert witness fees and expenses as costs, the trial court did not err by refusing to award appellees the requested fees and expenses.

## Attorney's Fees

We next consider (1) appellees' argument in their cross-appeal that the trial court erred by failing to award appellees all requested attorney's fees, and (2) appellants' complaint in their third issue that the trial court failed to award appellants' attorney's fees on issues on which they prevailed and awarded appellees attorney's fees on issues on which they did not prevail. Appellees requested attorney's fees of $141,853.85, and appellants requested attorney's fees of $325,000. "After balancing the rights and efforts of all sides," the trial court awarded Holly Oaks attorney's fees of $68,000 for trial and $5,000 if appealed to this Court.

We review a trial court's decision to award or not award attorney's fees under an abuse of discretion standard of review. *See Ridge Oil Co. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 162 (Tex.2004) (award of attorney's fees under Declaratory Judgments Act); *Horvath v. Hagey,* No. 03–09–00056–CV, 2011 WL 1744969, at *6 (Tex.App.-Austin May 6, 2011, no pet.) (op. on reh'g). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner, or when it acts without reference to any guiding rules and principles. *Downer,* 701 S.W.2d at 241–42.

Appellees argue that, under section 82.113 of the property code, they were entitled to recover as an assessment all attorney's fees incurred in collecting unpaid HOA dues from appellants. However, Holly Oaks' declaration defines an assessment to include "costs incurred in their collection, including reasonable attor-

ney's fees." [13] Further, section 82.161 of TUCA specifically allows for the recovery of "reasonable" fees by the prevailing party in a suit to enforce a violation of the declaration. We conclude, that under the facts of this case, Holly Oaks could recover only reasonable attorney's fees incurred in recovering unpaid HOA dues from appellants.

The determination of reasonable attorney's fees in a given case is usually a question for the fact finder. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex.1991). A reasonable attorney's fee is generally determined by considering: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997); *Horvath*, 2011 WL 1744969, at *8. Attorney's fees should also generally bear some reasonable relationship to the amount in controversy.

*Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 606 (Tex.App.-Dallas 1990, no writ); *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 684 (Tex.App.-Houston [1st Dist.] 2008, pet. denied). However, there is no rule that fees cannot be more than actual damages. *Murrco Agency*, 800 S.W.2d at 606–07; *Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 209–10 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

In this case, the trial court made no specific findings of fact regarding its award of attorney's fees. However, appellees did not prevail on all issues and all claims brought against appellants. Rather, appellees recovered nothing on seven of the seventeen units that formed the basis of their pleadings,[14] and appellants recovered damages based on their counterclaim for Holly Oaks unit 3. The trial court, "[a]fter balancing the rights and efforts of all sides," awarded Holly Oaks $68,000 in attorney's fees for trial and an additional $5,000 for appeal.

Based on this record, we cannot conclude (1) the trial court awarded appellees attorney's fees on units and claims on which they did not prevail, (2) the trial court, in ruling on appellees' request for attorney's fees, failed to consider that appellants prevailed on certain units and claims, or (3) the fees awarded were not reasonable. However, in light of our reversal and rendition of the damages based on unpaid HOA dues for Holly Oaks unit 32, we conclude the issue of attorney's fees must be reversed and remanded to the

---

**13.** Because the trial court awarded attorney's fees only to Holly Oaks, we need not discuss the condominium declarations of the other appellees.

**14.** We recognize that appellees abandoned at trial any claim for damages on several of the units and argued evidence pertaining to those units was offered only to establish appellants'

scheme and the alter ego allegations. However, appellees' pleadings pertained to all the disputed units and did not distinguish between those units on which appellees sought unpaid HOA dues from appellants and those units on which they did not seek any damages.

trial court for reconsideration. *See State Farm Lloyds v. Borum*, 53 S.W.3d 877, 894–95 (Tex.App.-Dallas 2001, pet. denied) (reversing and remanding attorney's fees awarded under Declaratory Judgment Act "because the record does not reflect the trial court's reasons for its award of fee to [the prevailing party], there is no evidence to indicate whether the trial court's award of fees would also be equitable and just in light of our opinion in this case"). To that extent, we sustain appellants' third issue. We overrule appellees' sole issue in their cross-appeal.

### Conclusion

We sustain appellants' first issue as to Holly Oaks unit 32. We reverse the trial court's judgment as to Holly Oaks unit 32 and render judgment that appellees take nothing on their claim based on that unit. We reverse the trial court's award of attorney's fees to Holly Oaks and remand the issue of attorney's fees to the trial court for reconsideration in light of our judgment as to Holly Oaks unit 32. In all other respects, the trial court's judgment is affirmed.