**Stacey Lynn THORNTON, Appellant,**

v.

**Melba L. DOBBS, Appellee.**

**No. 05–10–00041–CV.**

Court of Appeals of Texas, Dallas.

July 29, 2011.

Diana L. Faust, Richard Clark Harrist, Cooper & Scully, P.C., Dallas, Sheila Renee Shea, Sherman, for Appellant.

Kelly R. Bickerstaff, Kelly Bickerstaff, PC, Sherman, for Appellee.

Before Justices MARTIN RICHTER, LANG, and FILLMORE.

## OPINION

Opinion By Justice MARTIN RICHTER.

Stacey Lynn Thornton appeals from the trial court's judgment in favor of Melba L. Dobbs on her plea in intervention in the divorce proceeding of Stacey Lynn Thornton and Jeanna Carol Thornton. In three issues, appellant challenges the legal and factual sufficiency of the evidence to support recovery in favor of Dobbs under the theories of breach of contract, quantum meruit, and unjust enrichment. We affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Stacey Lynn Thornton and Jeanna Carol Thornton owned their residence at 1209 Bentbrook Lane in Sherman, Texas. The property included a guest house. In 2006, Melba L. Dobbs, Jeanna's mother, decided to move to Sherman, Texas. While she looked for a house to buy, the Thorntons let her stay in their guest house. In 2007, the Thorntons began a major remodeling project on their residence, adding 1,300 square feet to the main residence and a resort style swimming pool. The Thorntons and Dobbs also discussed remodeling and enlarging the guest house for Dobbs so she could live there permanently instead of buying her own house.

Because the Thorntons were in the process of remodeling their own residence, they did not have the money to take on the additional expense of remodeling the guest house at the same time. The decision was made that Dobbs would pay the construction costs for remodeling the guest house. Appellant obtained approval from the Bentbrook Homeowner's Association for Dobbs to reside in the Thorntons' guest house. Appellant obtained two different sets of plans for the guest house construction. Ultimately, Dobbs obtained a third set of plans on which they all agreed. Appellant appeared before the City of Sherman's planning and zoning commission to obtain approval for the guest house remodeling project. Dobbs hired a contractor and the remodeling of the guest house was completed.

Appellant filed for divorce in February, 2008, and Jeanna Thornton counter-sued. Dobbs filed a plea in intervention in the Thorntons' divorce, asserting an interest in the matter in controversy. Dobbs claimed she was living in the Thorntons' guest house and had paid for certain improvements to the guest house and the marital home. She claimed the Thorntons had agreed to repay her but had failed and refused to do so. Accordingly, she claimed the Thorntons owed her damages in the amount of $113,314.97. Dobbs later amended her plea to include claims for breach of contract, quantum meruit, and unjust enrichment.

On August 13, 2009, the trial court conducted a bench trial in the divorce action. On September 2, 2009, appellant filed his motion to sign decree of divorce. On September 3, 2009, the trial court conducted a hearing on appellant's motion, at which time Dobbs objected to the entry of a final decree until the court considered her plea in intervention. Following the hearing, the trial court signed the final decree of divorce. On September 24, 2009, after considering the pleadings, records on file, and the evidence, the trial court signed a

judgment in favor of Dobbs and against appellant and Jeanna Thornton, jointly and severally, in the amount of $113,000.00, and post-judgment interest. On October 5, 2009, appellant filed a request for findings of fact and conclusions of law. On October 26, 2009, he filed a motion for new trial or in the alternative, motion for remittitur and a separate motion for judgment notwithstanding the verdict. On November 30, 2009, the trial court issued its findings of fact and conclusions of law. This appeal followed.[1]

## DISCUSSION

Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings of fact and conclusions of law. With respect to Dobbs' claim for breach of contract, appellant argues that the evidence is insufficient to show: (1) he made an offer to reimburse Dobbs for improvements to the guest house, or that the essential terms of such an offer were communicated to Dobbs; (2) the parties had mutual assent or a meeting of the minds required for a binding and enforceable contract; and (3) Dobbs satisfied a condition precedent to the performance required by him under the terms of the alleged agreement. With respect to Dobbs' claim for quantum meruit, appellant contends the evidence is insufficient to show: (1) Dobbs made improvements to the guest house for his benefit; (b) he "accepted" the improvements Dobbs made to the guest house; and (3) he had reasonable notice that Dobbs expected to be paid for the services or materials. Finally, with respect to Dobbs' claim for unjust enrichment, appellant argues the evidence is insufficient to show: (1) he secured a benefit or passively received one which would be unconscionable to retain; (2) he obtained a benefit from Dobbs by fraud, duress, or the taking of undue advantage; and (3) he failed to make restitution of benefits received under such circumstances as to give rise to an implied or quasi-contract to repay.

### Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Pulley v. Milberger,* 198 S.W.3d 418, 426 (Tex.App.-Dallas 2006, pet. denied); *Merry Homes, Inc. v. Chi Hung Luu,* 312 S.W.3d 938, 943 (Tex.App.-Houston [1st Dist.] 2010, no pet.). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.,* 190 S.W.3d 108, 111 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994); *Merry Homes,* 312 S.W.3d at 943. When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *Pulley,* 198 S.W.3d at 426. We set aside the finding for factual insufficiency only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Cameron v. Cameron,* 158 S.W.3d 680, 683 (Tex.App.-Dallas 2005, pet denied). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Sw. Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 493 (Tex.App.-Houston

---

1. Jeanna Carol Thornton did not appeal from the September 24, 2009 judgment.

[1st Dist.] 1992, writ denied). As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the factfinder. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005).

When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *Pete Dominguez Enterprises, Inc. v. Cnty. of Dallas*, 188 S.W.3d 385, 387 (Tex.App.-Dallas 2006, no pet.). When reviewing the record, we determine whether any evidence supports the challenged finding. *BBQ Blues Texas, Ltd. v. Affiliated Business Brokers, Inc.*, 183 S.W.3d 543, 545 (Tex.App.-Dallas 2006, pet. denied). If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (more than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

We review de novo a trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex.App.-Austin 1999, pet. denied); *Westech Engineering, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Westech*, 835 S.W.2d at 196. Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.*

### Breach of Contract

In his first issue, appellant argues the evidence is legally and factually insufficient to establish the essential elements of Dobbs' breach of oral contract cause of action. The elements of a breach of contract claim are: (1) a valid contract, (2) plaintiff performed or tendered performance, (3) defendant breached the contract, and (4) plaintiff was damaged as a result of the breach. *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex.App.-Tyler 2004, pet. denied); *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex.App.-San Antonio 2002, no pet.). The following elements are required for the formation of a valid and binding contract: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex.App.-Dallas 2006, pet. denied); *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex.App.-Fort Worth 2004, pet. denied). The elements of written and oral contracts are the same and must be present for a contract to be binding. *Critchfield*, 151 S.W.3d at 233. In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding the communications. *Cessna Aircraft Co.*, 213 S.W.3d at 465.

Appellant challenges the trial court's findings of fact numbers 4 and 5, and conclusions of law numbers 1 through 6. He asserts the evidence is legally and factually insufficient to prove: (1) he made an offer to reimburse Dobbs for any improve-

ments to the guest house, (2) there was mutual assent, a meeting of the minds, and consideration, and (3) Dobbs satisfied the condition precedent to any obligation of appellant by moving out of the guest house.

At trial, appellant testified that he never offered to pay or reimburse Dobbs for expenditures or improvements she made to the guest house. He also testified that he recommended she not spend her money on the guest house. However, Dobbs testified that appellant told her if she ever decided she did not like the guest house and wanted to move, to keep all her receipts and he would reimburse her. Jeanna Thornton testified they all agreed that Dobbs could live in the guest house as long as the Thorntons lived at 1209 Bentbrook Lane. According to Jeanna, appellant always said he would provide for Dobbs. She testified "[i]f something happened and she became ill or she no longer wanted to be there, that she would get her money back." However, Jeanna testified that although she was there for part of the conversation, this agreement was between appellant and Dobbs. The trial court also heard testimony from Debra Dobbs, Jeanna Dobbs' sister. Debra lived out of town and came to visit for the holidays. Because she was concerned about her mother's living arrangements, she questioned appellant on two different occasions. According to Debra, appellant told her if Dobbs did not like it there, he would give her money back and she could build or do whatever she wanted.

Appellant argues the alleged contract is unenforceable because there is no evidence of a promise or obligation on the part of Dobbs to do anything, thus no consideration. According to the evidence, Dobbs decided to move to Sherman, Texas, to be close to her daughter and grandchildren. She agreed to live in the Thornton's guest house instead of buying her own house. Dobbs testified it was appellant's idea to remodel the guest house so she could live there. However, due to the Thornton's financial situation, Dobbs agreed to pay for the guest house improvements. Appellant had two different sets of building plans drawn up for the guest house. Dobbs also obtained a set of building plans which they agreed upon. Appellant obtained approval from the homeowners association for her to reside in the guest house. He also obtained approval for the proposed improvements from the planning and zoning commission of the city of Sherman. Dobbs obtained appellant's approval on the scope of the project, the building plans, the contractor, and the brick used. Once the contractor began renovating the guest house, he determined structural improvements were necessary to properly brace the upper floor so Dobbs paid for the structural improvements. She testified that all of the improvements she made were acceptable to appellant. According to the evidence, Dobbs did not pay rent, taxes or insurance on the guest house. However, she paid for electricity. Once she moved in, she helped her daughter and helped care for her four grandchildren. Appellant testified that the improvements to the guest house financially improved the value of his property in today's market.

Appellant argues that even if he did make a promise to reimburse Dobbs, which he expressly denies, his obligation is expressly conditioned on Dobbs moving out of the guest house or making a decision to move out of the guest house. He argues Dobbs has not performed all conditions precedent because she still lived in the guest house as of the date of the trial. Appellant moved out of the house and filed for divorce in February 2008. At some point after appellant had moved out of the house, he had a conversation with Dobbs in which she told him, "if you just give me

all the money I put in this place I would move out right now." Dobbs contends she decided to move out of the guest house and in her conversation with appellant, informed him of her decision.

According to the record, the house at 1209 Bentbrook Lane was part of the marital estate that was in issue at the trial. In the Thorntons' final decree of divorce, signed by the trial court on September 9, 2009, the house at 1209 Bentbrook was awarded to appellant. Jeanna was ordered to vacate the premises on or before October 1, 2009. During oral argument to this Court, appellee's counsel informed this Court that Dobbs was evicted from the guest house after the Thorntons' divorce became final.

In her amended plea in intervention, Dobbs alleged damages in the amount of $113,314.97. At trial, Dobbs testified she spent more than $113,314.97 on improvements to the guest house but could not find her receipts. Jeanna testified that her mother spent between $120,000.00 and $130,000.00 on improvements to the guest house. Appellant testified he had no reason to dispute Jeanna's testimony with respect to the amount spent by Dobbs.

After reviewing all the evidence, we conclude the evidence supporting the trial court's findings of fact is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761–62 (Tex. 2003); *Cain*, 709 S.W.2d at 176. Appellant testified he did not offer to reimburse Dobbs for her expenditures on the guest house. However, Dobbs and her daughter, Debra Dobbs, both testified that appellant offered to reimburse Dobbs if she did not like living in the guest house or decided to move. The trial court found the Thorntons made an offer. The evidence reflects Dobbs paid for the remodel-

ing work, provided child care for appellant's children, and paid her own electric bill. The trial court found that Dobbs performed her part of the agreement. The parties do not dispute the amount of money spent by Dobbs on improvements to the guest house. After appellant filed for divorce from Dobbs' daughter, Dobbs told appellant she would move out of the guest house if he would reimburse her for the money she spent remodeling it. The trial court found that appellant did not want Dobbs to live in the guest house.

The trial court, as factfinder, was the sole judge of the credibility of the witnesses. *Sw. Bell Media, Inc.*, 825 S.W.2d at 493. As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *See City of Keller*, 168 S.W.3d at 822. We conclude the evidence at trial supports the trial court's findings of fact numbers 4 and 5, and conclusions of law numbers 1 through 6 (to the extent they constitute findings of fact), and appellant's factual sufficiency challenge fails.

With respect to his legal sufficiency challenge, appellant failed to demonstrate there is no evidence to support the adverse findings. *Croucher*, 660 S.W.2d at 58; *Pete Dominguez Enterprises*, 188 S.W.3d at 387. Because there is more than a scintilla of evidence that appellant breached an oral contract to reimburse Dobbs for the remodeling expenditures, we conclude appellant's legal sufficiency challenge fails. *See Formosa Plastics Corp.*, 960 S.W.2d at 48; *see also King Ranch*, 118 S.W.3d at 751.

Based on the analysis above, we conclude the evidence is legally and factually sufficient to support Dobbs' claim for breach of oral contract. We uphold the trial court's conclusions of law that the Thorntons breached their oral agreement

with Dobbs and are indebted to Dobbs for the sum of $113,000.00. *Stable Energy*, 999 S.W.2d at 547; *Westech Engineering*, 835 S.W.2d at 196. Because the trial court's judgment can be sustained on Dobbs' breach of oral contract theory, we need not address appellant's second and third issues pertaining to Dobbs' quantum meruit and unjust enrichment theories of recovery. TEX.R.APP. P. 47.1.

### CONCLUSION

Based on our conclusions above, we affirm the trial court's judgment.