Janeen A. BAILEY, et al., Appellants,

v.

Michael T. GALLAGHER, John H. Kim, and Gallagher, Lewis, Downey & Kim, Appellees.

No. 05–09–00868–CV.

Court of Appeals of Texas, Dallas.

July 14, 2011.

Rehearing Overruled Sept. 29, 2011.

George Whittenburg, Mack Whittenburg, David Gamez, Jr., Whittenburg, Whittenburg, Garner & Stein, P.C., Amarillo, TX, Craig T. Enoch, Winstead PC, Austin, TX, for Appellant.

Gary D. Elliston, Melissa M. Leon, De-Hay & Elliston, LLP, David P. Herrick, Herrick & Associates, P.C., Dallas, TX, for Michael T. Gallagher.

Before Justices O'NEILL, FITZGERALD, and LANG.

## OPINION

Opinion By Justice FITZGERALD.

In this case, appellants endeavor to recover the share of attorney's fees that were paid to appellees Michael T. Gallagher, John H. Kim, and Gallagher, Lewis, Downey & Kim (collectively, "Gallagher") following settlement of appellants' lawsuit against the manufacturer of the diet drug Fen–Phen. The trial court's judgment decreed appellants take nothing on their claims. Appellants raise four issues in this Court, challenging the trial court's conclusions concerning the validity of Gallagher's fee agreement, his right to recover in quantum meruit, his compliance with fiduciary duties of disclosure, and his right to summary judgment on appellants' conversion claim. We affirm the trial court's judgment.

## BACKGROUND

Janeen A. Bailey and fifty-eight other plaintiffs who had taken the diet drug Fen–Phen originally sued American Home Products ("AHP"), the drug's manufacturer. Each plaintiff signed a contingent fee agreement with two firms: The Law Office of Azar & Associates and Attorney Brian Loncar, P.C. ("Azar and Loncar").[1] The agreements provided that Azar and Loncar were entitled to 40% of each plaintiff's recovery as attorney's fees. Subsequently, Azar and Loncar retained partners Jody Sheets and Clay Holcomb for the purpose of filing and settling the plaintiffs' claims. In June 2000, Azar and Loncar contracted with Gallagher for the limited purpose of settling the plaintiffs' claims against AHP. These two agreements called for Azar and Loncar to pay Gallagher 50% of the attorney's fees they received from the plaintiffs, and to pay Sheets and Holcomb 25% of the fees they received from plaintiffs, so long as the cases were settled.

Gallagher did settle the cases. The settlement process was overseen and approved by a Mississippi State District Court. Individual awards were made by a Special Master, who placed each plaintiff on a grid based upon objective medical criteria. Once the Special Master decided on an award for a plaintiff, that plaintiff was required to sign a document titled

---

1. The plaintiffs and Azar and Loncar had a number of disagreements concerning the representation; none of those are before us in this appeal.

Diet Drugs II Qualified Settlement Fund Release and Distribution Sheet (the "Distribution Sheet"), which identified the plaintiff's gross settlement, the amount of attorney's fees and expenses being subtracted therefrom, and the net amount the client was to receive. No money was distributed to any plaintiff or any attorney until the plaintiff signed the Distribution Sheet and the Distribution Sheet was returned to the Special Master. At that point, the Special Master released the net award to the plaintiff, and the Special Master notified Gallagher to release the appropriate attorney's fees to the attorney(s) for that plaintiff.

After the settlements were final, the plaintiffs in the AHP litigation sued a number of their attorneys on various theories. At the time of trial, only Gallagher remained. And, because the trial court had granted a number of partial summary judgments in Gallagher's favor, the only claim that was tried was one for breach of fiduciary duty.[2] Trial was to the court; the court's judgment decreed the plaintiffs take nothing. Forty-one of the original plaintiffs appeal the judgment of the trial court.

### INCOMPLETE RECORD

■ Appellants did not include the entire reporter's record in the record on appeal. If a party requests only a partial reporter's record, he must include in his request a statement of the points or issues to be presented on appeal. TEX.R.APP. P. 34.6(c)(1). If the designations are properly made, this Court will presume the par-

tial record constitutes the entire record for purposes of reviewing the stated points or issues. *Id.* 34.6(c)(4). However, the appealing party must comply strictly with rule 34.6(c) to activate this presumption that the omitted portions of the record are irrelevant. *Tull v. Tull,* 159 S.W.3d 758, 761 (Tex.App.-Dallas 2005, no pet.). In this case, the record contains no documentation of any attempt by appellants to comply with the provisions of rule 34.6 regarding a partial reporter's record. Accordingly, we must presume the missing portions of the reporter's record support the trial court's findings of fact, and we take those findings as true. *See id.*

### CONTINGENT FEE AGREEMENT

■ In their first issue, appellants contend the trial court erred "by holding that appellants could not bring an action to void a nonexistent, unwritten contingency fee agreement" between them and Gallagher. Appellants' argument under this issue contains two prongs: (1) no contingent fee contract existed between appellants and Gallagher, much less a written one that met the law's requirements; and (2) appellants should have been allowed to pursue an independent cause of action to void any purported unwritten agreement. Appellants contend the absence of a written contingent fee agreement between them and Gallagher violates section 82.065 of the Texas Government Code and rule 1.04(d) of the Texas Disciplinary Rules of Professional Conduct. TEX. GOV'T CODE ANN. § 82.065(a) (West 2005)[3]; TEX. DISCIPLIN-

---

**2.** Gallagher had received a summary judgment on a no-damages theory. Only the plaintiffs' claim for breach of fiduciary duty allowed for recovery without proof of damages. *See Burrow v. Arce,* 997 S.W.2d 229, 240 (Tex.1999) (client need not prove actual damages to obtain forfeiture of attorney's fee for attorney's breach of fiduciary duty to

client). Thus it was the only claim that survived for trial.

**3.** This section provides:

(a) A contingent fee contract for legal services must be in writing and signed by the attorney and client.

ARY RULES PROF'L CONDUCT R. 1.04(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, App. A (West 2005).[4] We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). We may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Id.*

There is no evidence in the record of any contingent fee agreement between appellants and Gallagher. Thus, there is no contingent fee contract to void.[5] Instead, appellants' complaint is actually rooted in the contingent ·fee agreement between Azar and Loncar and Gallagher: that agreement allowed Gallagher to recover—through Azar and Loncar—one half of the fees initially paid by appellants.[6] Because there is no evidence in the record suggesting Gallagher had a contingent fee agreement with appellants, section 82.065 is not applicable to these facts. *See Gibson v. Ellis,* 126 S.W.3d 324, 329 (Tex.App.-Dallas 2004, no pet.). Appellants' claim that Gallagher violated rule 1.04(d) is not well taken for the same reason. *See id.; see also Wilson v. Dovalina,* No. 04–07–00610–

CV 2008 WL 2744204 (Tex.App.-San Antonio July 16, 2008, no pet.) (where only contingent fee agreement is written one between two attorneys, that contract satisfies rule's requirement of writing). We overrule appellants' first issue.

### QUANTUM MERUIT

In their second issue, appellants contend the trial court erred when it concluded Gallagher was entitled to quantum. meruit relief. The court's conclusion, however, was specifically limited; it was an alternative to the court's conclusion that Gallagher's recovery was proper under his contract with Azar and Loncar. Because we have likewise concluded Gallagher's contractual recovery was proper, we need not address this alternative ground for relief.

### BREACH OF FIDUCIARY DUTY

■ In their third issue, appellants complain that Gallagher breached his fiduciary duty to them as clients by failing to comply with his duty of full disclosure. Appellants identify four complaints under this issue:

> (b) A contingent fee contract for legal services is voidable by the client if it is procured as a result of conduct violating the laws of this state or the Disciplinary Rules of the State Bar of Texas regarding barratry by attorneys or other persons.
> *Id.*

4. The rule provides in relevant part:

> A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (e) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined. If there is to be a differentiation in the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, the percentage for each shall be stated. The agreement shall state the litiga-

> tion and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement describing the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
> Tex. Disciplinary Rules Prof'l Conduct R. 1.04(d).

5. Because there is no agreement for appellants to void, we will not decide whether, under different circumstances, a plaintiff could bring an independent cause of action to void an unwritten contingent fee contract with an attorney.

6. Appellants raise no legal challenge to the Azar and Loncar–Gallagher agreement.

Gallagher [1] never had a fee agreement with appellants, even though both the Texas Government Code and the Disciplinary Code require contingent fee agreements to be in writing and signed by the client; [2] never explained his fee to appellants; [3] never communicated about the settlement procedures to appellants; [4] and, indeed, *never communicated with appellants at all.* (Emphasis in original.)

Again, we review a challenge to the trial court's conclusions of law de novo. *BMC Software,* 83 S.W.3d at 794.

The first two of appellants' complaints are subsumed by our resolution of their first issue: the only contingent fee relationship touching the parties before us was the agreement between Azar and Loncar and Gallagher. No such relationship existed between Gallagher and appellants. The agreement between the attorneys satisfied the requirement of a writing. *See Wilson,* 2008 WL 2744204 at *3. And as to Gallagher's lack of direct communication with plaintiffs—concerning settlement procedures or other matters—the trial court's findings undermine appellants' argument. The trial court found that responsibilities of representing plaintiffs were divided among Gallagher, Sheets and Holcomb, and Azar and Loncar. Sheets and Holcomb were assigned the responsibility of communicating with plaintiffs directly; indeed, Gallagher was instructed by Sheets and Holcomb *not* to communicate with plaintiffs directly.[7] Sheets informed plaintiffs by letter that "another lawyer with experience negotiating settlements with AHP was willing to include [them] in a settlement the lawyer had negotiated with

AHP." Holcomb identified Gallagher by name to the plaintiffs with whom he spoke. Finally, each plaintiff executed a series of documents: a Settlement Disclosure to Client; a Confidential Release, Indemnity and Assignment; and a Distribution Sheet. Together, these documents outlined all material information relating to the details of the plaintiffs' settlements with AHP. The trial court found that each of these documents constituted persuasive evidence that the communications from the attorneys were adequate. We conclude the necessary information relating to Gallagher's role in the lawsuit was disclosed to plaintiffs. We discern no breach of fiduciary duty by Gallagher, and we overrule appellants' third issue.

## CONVERSION

■ In their fourth issue, appellants contend the trial court erroneously granted summary judgment on their conversion claim.[8] However, as we noted above, the trial court granted another summary judgment in favor of Gallagher establishing that appellants had incurred no damages. Appellants have not challenged the no-damages summary judgment on appeal. Given that a plaintiff must prove damages before she may recover for conversion, we can uphold the trial court's judgment on conversion on this ground alone. *See United Mobile Networks, L.P. v. Deaton,* 939 S.W.2d 146, 147 (Tex.1997).

■ However, even if we review the conversion summary judgment that is challenged on appeal, we discern no error. We review a no-evidence summary judgment applying the same legal sufficiency

---

**7.** We note that appellants have admitted that Sheets and Holcomb were not negligent, did not breach their fiduciary duty toward appellants, and were entitled to the attorney's fees they received.

**8.** In the same motion, Gallagher sought summary judgment on plaintiffs' claim for fee forfeiture. That portion of the motion was denied by the trial court and is not before us.

standard we apply when reviewing a directed verdict. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 375 (Tex.App.-Dallas 2009, pet. denied). We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the challenged elements. *Id.*

■ The elements of a conversion cause of action are:

> (1) plaintiff owned, had legal possession of, or was *entitled to possession of the property;* (2) defendant assumed and exercised dominion and control over the property in an unlawful and *unauthorized manner,* to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property.

*Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 888 (Tex. App.-Dallas 2009, no pet.) (emphasis added). Gallagher's no-evidence motion for summary judgment contended that plaintiffs could not prove two specific elements of the tort: (1) lack of consent to the withholding of attorney's fees (i.e., that the fees were taken in an unauthorized manner), and (2) ownership or right to possession of the funds withheld for attorney's fees (i.e., that appellants were entitled to possession of the fees when Gallagher obtained them). Thus, plaintiffs bore the burden of coming forward with summary judgment evidence raising a genuine issue of material fact on each of those elements. *See* TEX.R. CIV. P. 166a(i).

We have reviewed the summary judgment evidence cited in appellants' Response to the Gallagher Defendants' No–Evidence Summary Judgment Motion Relating to Fee Forfeiture and Conversion and their Brief Opposing the Gallagher Defendants' No–Evidence Summary Judgment Motion Relating to Fee Forfeiture and Conversion. We conclude that none of that summary judgment evidence raises a genuine issue of material fact on the issues of consent or the plaintiffs' right to possession of the fees paid Gallagher by Azar and Loncar. Indeed none of the summary judgment evidence cited addresses these two specific elements of the tort at all.

Appellants complain that when each plaintiff consented to payment of the attorney's fees identified in her Distribution Sheet, she did not know Azar and Loncar would share those fees with Gallagher. For summary judgment purposes, the trial court could have assumed that to be true and still concluded there was no evidence of an unauthorized transfer. Plaintiffs agreed to pay the represented amount to Azar and Loncar. At that point—once plaintiffs consented to the transfer of the funds to Azar and Loncar—there could be no conversion by someone who merely received a portion of the funds later. Likewise, once the plaintiffs consented to transfer the funds to Azar and Loncar, the plaintiffs were no longer entitled to immediate possession of those funds. Thus, when a portion of the funds was transferred in turn to Gallagher, plaintiffs no longer had any right to possess to the funds, and there could be no conversion.

The trial court did not err in granting summary judgment on the conversion claim. We overrule appellants' fourth issue.

CONCLUSION

We have decided each of appellants' issues against them. We affirm the trial court's judgment.