**Affirmed and Opinion Filed February 3, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00035-CV

## CODY MURPHY, Appellant
## V.
## KILLER RIDEZ, INC, Appellee

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-05462-E**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Lewis
Opinion by Justice Francis

Cody Murphy appeals the trial court's judgment in favor of Killer Ridez, Inc. In fourteen issues, Murphy challenges several findings of fact and conclusions of law and generally claims the evidence is legally insufficient to support the judgment. We affirm.

James Bayne and his father own Killer Ridez. The company, which does mostly custom and restoration work on vehicles, also takes "a few collision jobs every month just for cash flow." In October 2009, Murphy took his 1983 Chevrolet pickup to Killer Ridez for collision repair work. Murphy then decided he wanted the truck to "look showroom new" and asked Killer Ridez to restore it. Over the next nineteen months, Killer Ridez did a partial restoration of Murphy's pickup. The company occasionally sent Murphy invoices for work performed as well as parts and materials supplied and he, in turn, paid the invoices. In April 2011, Murphy said he

needed the truck to drive and stopped by the shop to pick it up. Bayne and his staff went over everything they had done and pointed out things that had not been restored or replaced, such as the carburetor which Murphy told them not to replace. Bayne noted the truck needed an inspection sticker but told Murphy the truck "was not running good," at least in part because of the carburetor issue. Murphy paid the balance owed and left with the truck. When he later put a stop payment on the check and refused to pay, Killer Ridez sued for breach of contract and sworn account. Following a bench trial, the trial court entered judgment in favor of Killer Ridez and made findings of fact and conclusions of law. This appeal followed.

On appeal, Murphy generally claims the evidence is legally insufficient to support the judgment and specifically challenges four findings of fact and ten conclusions of law relating to the breach of contract claim. Initially, we note Murphy's complaint on appeal challenges the existence and validity of the contract, claiming the parties had no agreement regarding charges for parts and materials and no evidence shows they had a contract. At trial, however, Murphy did not challenge the validity of the contract, he did not argue the contract was missing an essential element, nor did he claim there was no "meeting of the minds." In fact, in his amended counter petition, Murphy alleged he and Killer Ridez had a contract, Killer Ridez "promised and agreed to perform restoration" of Murphy's pickup, and Killer Ridez breached its contractual obligations to Murphy.

Assertions of fact, not pleaded in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001); *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). A judicial admission that is clear and unequivocal is conclusive upon the party making it; it relieves the opposing party of the burden of proving the admitted fact and bars the admitting party from

disputing it. *Wolf*, 44 S.W.3d at 568; *Gevinson v. Manhattan Constr. Co.*, 449 S.W.2d 458, 467 (Tex. 1969).

Here, Murphy pleaded the existence of a contract and alleged Killer Ridez was the breaching party. In so doing, he has judicially admitted the existence of a contract and is now barred from disputing it. We reject Murphy's appellate challenge of whether the parties had a contract. We now turn to the sufficiency of the evidence to support the trial court's judgment on Killer Ridez's breach of contract claim.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Thornton v. Dobbs*, 355 S.W.3d 312, 315 (Tex. App.—Dallas 2011, no pet.). When, as here, the appellate record contains a reporter's record, findings of fact are not conclusive and are binding only if supported by the evidence. *Id*. We review a trial court's findings of fact under the same legal sufficiency of the evidence standard used when determining if sufficient evidence exists to support an answer to a jury question. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In reviewing a "no evidence" point of error, a reviewing court may consider only the evidence and inferences that tend to support challenged findings and will disregard all evidence and inferences to the contrary. *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Thornton*, 355 S.W.3d at 315–16. We do not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *May v. Buck*, 375 S.W.3d 568, 573 (Tex. App.—Dallas 2012, no pet.). If there is more than a scintilla of evidence to support the

findings, the "no evidence" challenge cannot be sustained. *Catalina*, 881 S.W.2d at 297; *May*, 375 S.W.3d at 573.

We review de novo a trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence; incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.*

To establish a breach of contract claim, a plaintiff must show a valid contract, plaintiff performed or tendered performance, defendant breached the contract, and plaintiff was damaged as a result of the breach. *Thornton*, 355 S.W.3d at 316.

At trial, Bayne said Murphy brought his pickup to Killer Ridez on October 1, 2009 for collision repair work. Bayne knew Murphy because Murphy previously brought two other vehicles to the shop. Because of this past relationship, Bayne cut his labor charge from $55/hour to $38/hour. Murphy's pickup had been struck while parked, and Bayne gave Murphy a quote based on the insurance estimate. On the invoice Murphy signed, Bayne noted, "Repair Body – Repair Rust – Firewall, Windshield cab corner" and "Paint." Murphy was supplying the fender and a door.

Murphy later decided he wanted the pickup "to look like showroom new" and asked Bayne to restore it. Once Bayne and his team "tore it down," they discovered "a ton of rust in the truck." They cut out the rust, welded in new sheet metal, and "re-bodywork[ed] those areas." At Murphy's request, they installed vintage air conditioning, and new emblems, headlights, taillights, front bumper, bumper guards, fuel line, and battery. Bayne noted he could not get the pickup inspected because it was not running well and needed a new carburetor. Bayne told Murphy he could install an Edelbrock carburetor for $350, but Murphy said he wanted a

Rochester carburetor. When Bayne told him the Rochester would cost $850, Murphy said he had one at home and would install it himself.

Although Bayne initially billed Murphy every two weeks, Murphy did not timely pay as they had agreed. When a payment was delayed, Bayne and his team stopped work on the pickup until the payment arrived. At one point, "it took a couple months waiting on him to get caught up on [the] bill." Bayne testified the work should have been completed in six to eight months but took much longer because of the slow payments. Killer Ridez offered, and the trial court admitted without objection, invoices for parts, materials, and labor totaling $28,171.19 as well as evidence of payments Murphy made totaling $22,210.07. Murphy wrote a check for the remaining balance of $5,961.12; however, he placed a stop payment on the check, complaining that some of the work on the pickup was "incomplete." Bayne said he always tells customers, including Murphy, to bring the vehicle back after a few days, and Killer Ridez will fix any punch list items for free. Bayne told Murphy he would fix any problems or issues Murphy had without charge and to bring the pickup to the shop the following Saturday. Murphy did not bring the truck in nor did he contact Bayne about any problems with the truck. Although Killer Ridez asked Murphy for the final payment, Murphy did not pay the balance owed.

Murphy said he signed the invoice authorizing the repair work on the pickup. Although he initially testified he did not know about any problems with the truck when he picked it up in April 2011, he conceded Bayne told him about most of the problems and that, after picking up the vehicle, he did not talk to Bayne about getting those problems fixed. Murphy said he stopped payment on the last check because in his opinion, the work on the truck "wasn't adequate." He called Bayne to tell him about the stop payment and Bayne offered to fix any issues and would "get it taken care of." But Murphy did not take the pickup back to Killer Ridez.

After reviewing all the evidence, we conclude there is more than a scintilla of evidence that the total amount of repairs made to the pickup was $28,171.19, and Murphy paid $22,210.07, leaving an outstanding balance of $5,961.12 that Murphy has not paid. Furthermore, we conclude the trial court did not err in concluding Murphy and Killer Ridez had a contract which Murphy breached by failing to pay Killer Ridez for its services and that the breach caused Killer Ridez to suffer injury. We overrule Murphy's challenges to the trial court's findings of fact and conclusions of law on the breach of contract claim.

Having reached this conclusion, we need not address Murphy's complaints about the sworn account claim. We likewise need not address Murphy's contention that the mechanic's lien on the pickup truck and the award of attorney's fees are improper because these complaints are premised on a finding that no evidence supports the breach of contract claim. We overrule Murphy's issues.

We affirm the trial court's judgment.

130035F.P05

/Molly Francis
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CODY MURPHY, Appellant

No. 05-13-00035-CV      V.

KILLER RIDEZ, INC, Appellee

On Appeal from the County Court at Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-11-05462-E.
Opinion delivered by Justice Francis,
Justices Lang-Miers and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee KILLER RIDEZ, INC recover its costs of this appeal from appellant CODY MURPHY.

Judgment entered February 3, 2014

/Molly Francis/
MOLLY FRANCIS
JUSTICE