**Affirmed and Opinion Filed July 3, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01466-CV

## MOSHEN SADEGHI, Appellant
## V.
## JAMES GANG, Appellee

### On Appeal from the 382nd Judicial District Court
### Rockwall County, Texas
### Trial Court Cause No. 1-06-818

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Evans
Opinion by Justice Bridges

Appellant Moshen Sadeghi appeals from a take-nothing judgment entered in favor of

Appellee James Gang. In a single issue, Sadeghi contends that, in light of this Court's prior

opinions,[1] the trial court erred in its judgment when the evidence satisfied all elements of his

breach of contract claim. Gang also raises a cross-issue that the take-nothing judgment should be

affirmed because his acceptance of the offer contained in the agreement was released, excused,

or became voidable due to Sadeghi's acts and/or omissions. We affirm.

### Background

Because the background of this case remains substantially unchanged, we reiterate and

update the facts of this case as stated in both our 2008 Opinion and our 2010 Opinion.

---

[1] *Gang v. Sadeghi*, No. 05-09-00898-CV, 2010 WL 4352714 (Tex. App.–Dallas Nov. 4, 2010, no pet.) ("2010 Opinion"); *Sadeghi v. Gang*, 270 S.W.3d 773 (Tex. App.–Dallas 2008, no pet.) ("2008 Opinion").

Sadeghi was a plaintiff in a lawsuit against USA Secur*Glass Corporation ("Secur Glass"), Secur Car Armor Corporation ("Secur Car") (together, the "Corporations") and others. Gang was not named as a party to the lawsuit, but participated in the negotiation of a settlement. As part of the multi-party settlement, Gang agreed to purchase Sadeghi's stock in the Corporations. The agreement, dictated into the record in open court, provided that Gang was to purchase all of Sadeghi's interest in Secur Car, represented by 833 shares of stock, and whatever interest Sadeghi owned in Secur Glass. The purchase price of the stock was to be $1,200,000 if the transaction closed within 60 days, $1,300,000 if the transaction closed after 60 but within 120 days, and $1,400,000 if the transaction closed within 120 to 180 days. At the expiration of the 180th day, Gang was obligated to purchase the stock. The stock was to be held in escrow until the purchase price was paid. The effective date of the agreement was to be April 10, 2006, the day the agreement was announced in open court. The parties agreed Gang would make a $20,000 down payment when the agreement was executed. The down payment was non-refundable, but was to be credited toward the purchase price.

The attorney reciting the terms of the agreement into the record also noted the parties' acknowledgment that the purpose of the settlement was to resolve the issue of previously issued shares in excess of the share limit. The parties agreed to full mutual releases and the dismissal of all claims with prejudice. Each party was to be responsible for his own costs and attorney's fees. We noted in our 2008 Opinion: "There is no dispute that the parties contemplated this agreement would also be subsequently reduced to writing."

After the agreement was announced in court, counsel for the Corporations provided counsel for Sadeghi with a draft stock purchase agreement. The parties agreed the draft contained an error concerning a material term because it changed the effective date of the agreement. After the draft was circulated, the parties' counsel met once to discuss it, but the

draft agreement was never signed. After receiving notice that Gang did not intend to consummate the purchase, Sadeghi made demand upon Gang to honor the oral agreement dictated into the record. When Gang refused, Sadeghi initiated an action for breach of contract and fraudulent inducement.[2]

Gang filed a motion for summary judgment, arguing the contract was unenforceable as a matter of law because it was missing essential terms. Sadeghi filed a cross motion for summary judgment alleging the contract contained all of the essential terms; therefore, it was enforceable as a matter of law. The trial court granted Gang's motion and found there was no enforceable contract. However, in our 2008 Opinion, we reversed the trial court's judgment and concluded the parties entered into an enforceable contract. *Sadeghi*, 270 S.W.3d at 774. We remanded the case for further proceedings consistent with our 2008 Opinion. *Id.* at 777.

In our 2010 Opinion, we noted that, on remand, the trial court failed to conduct any further proceedings, but instead simply signed a judgment against Gang and awarded Sadeghi $1.4 million. *Gang*, 2010 WL 4352714, at *1. We determined the trial court erred when it granted Sadeghi's motion based on elements that were never raised in a proper summary judgment motion. *Id.* at *2. We again reversed and remanded the case to the trial court for proceedings consistent with our 2010 Opinion. *Id.*

On remand, the trial court conducted a bench trial and, at its conclusion, ordered a take-nothing judgment in favor of Gang. The trial court then issued its findings of fact and conclusions of law, finding, in pertinent part, that the "agreement recited in court required [Sadeghi] to deliver all of his stock in Secur Car Armor Corporation and USA Secur Glass Corporation to attorney Robert Tobey who was to act as escrow agent." The trial court also

---

[2] The fraudulent inducement claim was disposed of by a Mother Hubbard clause in the judgment and was not raised on appeal when we issued our 2008 Opinion.

found the agreement required Sadeghi's stock "to be held in escrow by Robert Tobey pending payment by Defendant James Gang pursuant to the terms of the agreement," but that Sadeghi "did not deliver his stock to the escrow agent, Robert Tobey." The trial court thereby concluded Sadeghi "did not perform a condition precedent of the agreement to place his stock into escrow with Robert Tobey." The trial court further concluded that Gang's "failure to perform under the original agreement was excused by [Sadeghi's] failure to perform," and Sadeghi "failed to meet his burden of proof required to establish an unexcused breach of contract by [Gang]." This appeal ensued.

## Analysis

In a single issue, Sadeghi contends that, in light of this Court's 2008 Opinion and 2010 Opinion, the trial court erred in its judgment when the evidence satisfied all elements of his breach of contract claim. Sadeghi further asserts that, in light of our 2008 Opinion and 2010 Opinion, the trial court's findings and final judgment cannot be sustained on any legal theory supported by the evidence.

### *Standard of Review*

Findings of fact in a case tried to the court have the same force and effect as jury findings and are reviewed by the same standards used to review challenges to the sufficiency of the evidence to support jury findings. *See, e.g., Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Sharifi v. Steen Automotive, LLC,* 370 S.W.3d 126, 147 (Tex. App.−Dallas 2012, no pet.); *Thornton v. Dobbs,* 355 S.W.3d 312, 315 (Tex. App.−Dallas 2011, no pet.). When a party challenges the legal sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof at trial, the party must demonstrate that there is no evidence to support the adverse finding. *See, e.g., Thornton,* 355 S.W.3d at 316. If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Id.* When a party

challenges the legal sufficiency of the evidence to support an adverse finding on an issue on which he had the burden of proof at trial, he must show there is no evidence to support the trial judge's finding and the evidence conclusively establishes the finding urged by the challenging party. *See, e.g., Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 710 (Tex. App.−Dallas 2011, pet. denied). "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). In our review, we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. The trial court, as fact-finder in a bench trial, is the sole judge of the credibility of the witnesses. *Id.*

We review a trial court's conclusions of law de novo. *See, e.g., Sharifi*, 370 S.W.3d at 148; *Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 430 (Tex. App.−Dallas 2011, pet. denied). "The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Wright Grp. Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex. App.−Dallas 2011, no pet.). We must uphold conclusions of law if any legal theory supported by the evidence sustains the judgment. *See Bailey v. Gallagher*, 348 S.W.3d 322, 326 (Tex. App.−Dallas 2011, pet. denied); *Bundren*, 347 S.W.3d at 430.

***Failure to Tender Stock into Escrow***

Because it is dispositive, we focus on Sadeghi's challenge to conclusion of law number nine in which the trial court concluded Sadeghi "did not perform a condition precedent of the agreement to place his stock into escrow with Robert Tobey." A condition precedent is an event

that must happen or be performed before a right can accrue to enforce an obligation. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992).

The record before us shows the agreement between the parties stated: "Stock will be held in escrow until the money is paid." While the agreement between all of the parties[3] was being dictated into the record, the trial court asked if Robert Tobey, counsel for Secur Glass and Secur Car and other individual defendants, would be willing to undertake the obligation of holding the stock in escrow, and Tobey accepted.[4]

At the bench trial underlying this appeal, Sadeghi was cross-examined by Gang's counsel as follows:

> Q. So the, "Stock will be held in escrow until the money is paid." Did I read that correctly?
>
> A. Yes.
>
> Q. Did you agree to that?
>
> A. Yes.
>
> Q. Did you know that you would have to put your stock in escrow until the money was paid by Mr. Gang?
>
> A. Yes.
>
> Q. And that was a term and condition of your agreement, was it not?
>
> A. According to the transcript.
>
> Q. And you agreed to that, didn't you?
>
> A. Yes.
>
> Q. And that's the agreement you're seeking to enforce, is it not?

[3] The settlement agreement dictated into the record included the settlement between all of the parties in the case styled and numbered: *Kourosh Tebyanian and Moshen Sadeghi v. Paul R. Sivertson, Ronald Sivertson, David Sivertson, James Vincent, U.S.A. Secur\*Glass Corporation, Secur Car Armor Corporation, Locke, Liddell & Sapp, LLP and Kirte Kinser*, Trial Court Cause No. 05-01362-J.

[4] Tobey's acceptance to hold stock in escrow was made immediately prior to the dictation of the agreement between Sadeghi and Gang into the record.

A. Yes.

Sadeghi later conceded he "knew that [his] stock had to be held in escrow until the payment went through." However, Sadeghi also admitted he did not escrow his stock as follows:

Q. (BY [COUNSEL FOR GANG]) Now, so we are absolutely clear, you did not escrow your stock with Mr. Tobey or with anybody else, correct?

[SADEGHI'S COUNSEL]: Repetitious, Your Honor.

THE COURT: Overruled.

[SADEGHI]: Yes.

Q. (BY [COUNSEL FOR GANG]) You did not sign any agreements for settlement or for sale of stock to Mr. Gang, correct?

[SADEGHI'S COUNSEL]: Also repetitious, Your Honor.

THE COURT: Overruled.

[SADEGHI]: Yes, sir.

Q. (BY [COUNSEL FOR GANG]) That is correct?

A. That is correct.
…

Q. And is it fair to say that all the way up through today, you have kept possession of your stock in both Secur Car and Secur Glass?

A. Yes.

The following relevant cross-examination of Sadeghi also transpired:

Q. . . . Now, it also says -- so you knew that you had to put your stock in escrow --

A. Yes.

Q. -- with Mr. Tobey, right?

A. Yes.

Q. You never did, did you?

A. There was no escrow account set up.

Q. You never put it in escrow with Mr. Tobey. You never delivered your stock to Mr. Tobey, did you?

A. They never set up an account so I can deliver it.

In his brief, Sadeghi argues that, with no escrow agreement provided by Tobey, "placing the stock in escrow became a moot exercise." However, unlike Sadeghi's obligation to tender the stock into escrow, the record reflects an escrow agreement was not a part of the material terms of the agreement announced to the trial court.[5]

"A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *See Solar Applications Engineering, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 224-225 (1981)). Based upon the record before us, we conclude the agreement dictated to the trial court required Sadeghi to tender his stock into escrow with Tobey before Gang's obligation to purchase the stock accrued. If an express condition is not satisfied, the party whose performance is conditioned is excused from any obligation to perform. *See Solar Applications*, 327 S.W.3d at 108 (citing *Dalton*, 840 S.W.2d at 956; RESTATEMENT (SECOND) OF CONTRACTS § 225). Because Sadeghi did not tender his stock into escrow, Gang's obligation to perform under the contract was excused. *See id.*

Therefore, based upon the record before us, we conclude it was reasonable for the trial court to hold that Sadeghi's failure to perform under the agreement excused Gang's obligation to perform under the agreement. *See Bailey*, 348 S.W.3d at 326; *Bundren*, 347 S.W.3d at 430. Because we conclude Sadeghi's failure to tender his stock into escrow excused Gang's

---

[5] Sadeghi further argues in his brief that he "understood Gang to have repudiated the Agreement." However, during cross-examination, Sadeghi admitted Gang never told him that he (Gang) was not going to honor the agreement. In addition, during the deposition of Tobey that was read into the record at trial, Tobey affirmed Gang never communicated to him (Tobey) that Gang did not intend to go forward with the settlement.

performance under the contract, we need not reach Sadeghi's additional arguments or Gang's cross-point. We overrule Sadeghi's sole issue.

## Conclusion

Having overruled Sadeghi's sole issue on appeal, we affirm the judgment of the trial court.

121466F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MOSHEN SADEGHI, Appellant

No. 05-12-01466-CV          V.

JAMES GANG, Appellee

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 1-06-818.
Opinion delivered by Justice Bridges.
Justices Moseley and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JAMES GANG recover his costs of this appeal from appellant MOSHEN SADEGHI.

Judgment entered July 3, 2014