**Opinion issued December 31, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00177-CV

———————————

**HARRIS COUNTY WATER CONTROL AND
IMPROVEMENT DISTRICT NO. 89, Appellant**

**V.**

**308 FURMAN, LTD., Appellee**

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2020-43780**

---

## MEMORANDUM OPINION

Appellant, Harris County Water Control and Improvement District No. 89 (the "District"), challenges the trial court's rendition of summary judgment in favor of appellee, 308 Furman, Ltd. ("Furman"), in Furman's suit against the District for breach of contract. In nine issues, the District contends that the trial court erred in

granting summary judgment in favor of Furman based on the affirmative defense of res judicata.

We affirm.

## Background

The District is a municipal utility district in Harris County, Texas, that sells fresh water, sewage treatment, drainage, and related services to residents within its area. Furman is a residential developer that purchased approximately 308 acres within the District (the "property"). In December 2002, the District and Furman entered into a "Water, Sewer, and Drainage Facilities Reimbursement Agreement" (the "reimbursement agreement"), under which the District agreed to reimburse Furman for the eligible portion (the "reimbursable share")[1] of the construction costs that Furman, as developer of the property, assumed in constructing the fresh water supply lines, sanitary sewers, storm sewers, and drainage facilities (collectively, the "facilities") "intended for use or required to be constructed to serve the [p]roperty." As to the amount of payment, the District agreed, under certain conditions, to "pay [Furman] up to the maximum for all sums advanced to, or on behalf of, the District up to the maximum extent permitted under the [Texas Commission on

---

[1]   The reimbursement agreement defined "[r]eimbursable [s]hare" as "the amount of reimbursement specified in the reimbursement audit." (Internal quotations omitted.)

2

Environmental Quality ("TCEQ") Rules], including payment of interest on the funds so advanced or to or paid on behalf of the District by [Furman]."

Additionally, Furman agreed to "maintain and provide the District with a complete accounting of all [c]onstruction [c]osts" that it incurred "in order to determine the [r]eimbursable [s]hare." In return, the District "agree[d] to make all reasonable efforts to file bond applications, obtain approval" from the TCEQ "for the sale of [b]onds, and to sell the [b]onds" to fund the reimbursements to Furman. And on payment of the reimbursable share by District, Furman agreed to convey its property interest in the facilities to the District.

Furman and the District also agreed that Texas law applied to the reimbursement agreement and that any obligations created by the reimbursement agreement "[we]re further subject to all rules, regulations[,] and laws of any regulatory agency having jurisdiction, including the Rules of the [TCEQ]."

A dispute then arose between Furman and the District as to whether certain costs were reimbursable, and Furman appealed the District's decision refusing to reimburse it for those costs to the TCEQ. The TCEQ granted Furman's appeal in part and denied it in part. In its Order, the TCEQ made findings of fact and conclusions of law to support its ruling. Its findings of fact, in pertinent part, were as follows:

> 1. In 2002, . . . Furman . . . and [the District] entered into [the reimbursement agreement].

2. The [reimbursement agreement] provide[d] that the facilities would be purchased by the District through the issuance of bonds approved by the [TCEQ].

3. On May 2, 2017, the District's board of directors[2] . . . decided not to include in Bond Application No. 7: reimbursement for the Brunswick Meadows pump station . . . in the amount of $813,346,25; reimbursement for money advanced to the District in the amount of $138,434.77; payment of five years of interest in the amount of $791,289.01; and reimbursement of Brunswick Meadows['] detention pond . . . maintenance expenses in the amount of $265,124.46.

4. Furman filed its first appeal with TCEQ on June 1, 2017, and an amended appeal on January 30, 2018. The appeals were based on the District's omission of the above-listed items in Bond Application No. 7 for which Furman claim[ed] it [wa]s entitled to reimbursement under the [reimbursement agreement].

5. The [reimbursement agreement] provide[d] that Furman would construct water, sewer, and drainage facilities to serve land owned by Furman and located in the District.

6. The [reimbursement agreement] provide[d] that the facilities would be purchased by the District through issuance of bonds approved by TCEQ.

7. Under the [reimbursement agreement], the District's obligation to purchase the [d]etention [p]ond and [p]ump [s]tation (collectively, the ["facilities"]) and reimburse Furman [wa]s subject to the District engineer's certification that the construction ha[d] been completed in accordance with plans and specifications as approved by the District.

8. The [facilities'] plans and specifications, which indicated Furman's intent to have [the] Harris County Flood Control

---

[2] *See* TEX. WATER CODE ANN. § 49.051 (providing "[a] district shall be governed by its board, the number of which is otherwise provided by law").

4

District (HCFCD) accept the [f]acilities for maintenance, were approved by the District.

9. The District's reimbursement to Furman was not conditioned on HCFCD's acceptance of the [f]acilities for maintenance.

10. Construction of the [f]acilities was completed in 2010.

. . . .

13. In 2009, Furman and the District entered into a [l]etter [a]greement . . . , which provided that Furman was solely responsible for maintenance until HCFCD accepted the [f]acilities for maintenance.

14. In 2015, Furman paid the local Homeowners' Association (HOA) $160,977.60 for ten years of maintenance as part of the HOA's agreement to assume from Furman responsibility for maintenance of the [f]acilities.

15. The District did not incur any damages as a result of HCFCD's non-acceptance of the [f]acilities.

16. The [facilities] were suitable and necessary because increased detention capacity was required.

17. The cost of the [f]acilities was reasonable.

18. Furman paid the District's attorneys, engineers, and bookkeepers for work performed for the District, not for Furman. Furman's payment of those invoices on behalf of the District were developer advances.

19. Two years of interest is the industry standard.

20. The District has the discretion whether to reimburse the developer for two years or five years of interest.

21. Maintenance of the [f]acilities refers to mowing, seeding, and fertilizing around the [facilities].

5

22. Furman handled maintenance, including mowing, of the [d]etention [p]ond from 2010 to 2013.

23. From 2013 through 2017, the District hired a third party to mow the [f]acilities more frequently, approximately monthly, because it had received complaints about snakes, rodents, and tall grass.

24. In 2015, Furman entered into an agreement with the HOA to transfer maintenance responsibility to the HOA. Furman paid the HOA approximately ten years of maintenance expenses in relation to that agreement.

25. The District deducted its [f]acilities maintenance expenses from 2013 through 2017 from the amount to be reimbursed to Furman in Bond Application No. 7.

26. Mowing expenses are not typically presented as a bond item for reimbursement in TCEQ bond applications, but most maintenance and operating budgets have a line item for mowing.

27. If the District had included the requested $2 million in Bond Application No. 7, it would still have complied with TCEQ's economic feasibility rules.

. . . .

30. On April 30, 2018, a Notice, of Hearing was issued to the parties to this appeal. The notice contained a statement of the time, place, and nature of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and either a short, plain statement of the factual matters asserted or an attachment that incorporated by reference the factual matters asserted.

. . . .

The TCEQ also made the following conclusions of law:

1.  TCEQ has jurisdiction over this matter.[3]

2.  [The State Office of Administrative Hearings (the "SOAH")] has jurisdiction to conduct the administrative hearing in this matter, including the authority to issue a Proposal for Decision with Findings of Fact and Conclusions of Law.[4]

. . . .

4.  The hearing was conducted pursuant to the Administrative Procedure Act.[5]

5.  Furman ha[d] the burden of proving by a preponderance of the evidence that the District erred in its decisions.[6]

6.  If submitted by the District in Bond Application No. 7, the costs of the [p]ump [s]tation, developer advances, five years of interest, and maintenance expenses would be eligible for reimbursement with utility bond funds.[7]

7.  The District erred in its decision to exclude from Bond Application No. 7 reimbursement of $813,346.25 to Furman for the [p]ump [s]tation.

8.  The District erred in its decision to exclude from Bond Application No. 7 reimbursement of $138,434.77 to Furman for developer advances.

9.  The District erred in its decision to deduct $265,124.46 in [f]acilities maintenance expenses from Furman's reimbursement proceeds.

---

3   *See id.* §§ 54.239, 54.241.

4   *See* 30 TEX. ADMIN. CODE § 80.6 (Tex. Comm'n on Envtl. Quality, Referral to SOAH).

5   *See* TEX. GOV'T CODE ANN. ch. 2001.

6   *See* 30 TEX. ADMIN. CODE § 80.17(a) (Tex. Comm'n on Envtl. Quality, Burden of Proof).

7   *See id.* ch. 293 (Tex. Comm'n on Envtl. Quality, Water Districts).

10.  Furman did not meet its burden of proof in establishing that the District erred regarding the amount of interest paid to Furman in Bond Application No. 7.

. . . .

The District did not seek judicial review of the TCEQ's ruling or provide any payment to Furman for the reimbursement amounts that, according to the TCEQ Order, the District had erroneously excluded from Bond Application No. 7.

In its first amended petition, filed in the trial court, Furman alleged that it "purchased [the property] . . . to develop a residential neighborhood." In 2002, Furman and the District entered a "reimbursement agreement," a copy of which Furman attached to its petition. Under the reimbursement agreement, Furman "agreed to construct . . . water, sewage, and drainage improvements and then convey those improvements to the District once they were completed." In return for the conveyance, the District "agreed to reimburse Furman for its costs in making those improvements through the issuance of bonds."

Furman completed its work on the property in 2010. In May 2017, the District issued its bond but "intentionally excluded" certain costs which, according to Furman, were "eligible for reimbursement." Those costs included the "[c]onstruction of a water pump station," "[d]eveloper advances," "[i]nterest reimbursement," and "[m]owing maintenance expenses," which, in total, amounted to "over $2 million."

8

Furman "appealed the District's decision to exclude those costs to the [TCEQ]."[8]  In September 2019, "a full evidentiary hearing was held" before an administrative law judge.  The TCEQ then issued its Order, in which it "concluded that all four categories of costs for which Furman sought reimbursement would have been eligible for reimbursement if submitted by the District in its bond application."  Thus, Furman asserted that the District had "erred in failing to reimburse Furman" for three categories of the costs for which it had sought reimbursement, namely, the costs that Furman had incurred in the construction of the water pump station, the developer advances, and the mowing maintenance expenses.

Furman maintained that the District's conduct constituted a breach of the reimbursement agreement, which was "a valid and enforceable contract."  According to Furman, it had "performed, tendered performance of, or [wa]s excused from performing its contractual obligations," the District "materially breached its contractual obligations to Furman," and such breach was "a proximate cause of the damages sustained by Furman."

Furman also argued that "res judicata require[d] a finding" in its favor on its breach-of-contract claim because a "court of competent jurisdiction" had rendered "a prior final judgment on the merits" involving the same parties as those in the

---

[8]     *See* TEX. WATER CODE ANN. §§ 54.239, 54.241; TEX. GOV'T CODE ANN. § 2001.144; 30 TEX. ADMIN. CODE § 80.273 (Tex. Comm'n on Envtl. Quality, Decision Final and Appealable).

instant suit, which was "based on the same claims as were raised in the first action." According to Furman, then, it was "entitled to actual damages for unpaid reimbursable funds due under the [reimbursement agreement] in the amount of $1,216,905.48," as well as its attorney's fees and costs.

The District answered, generally denying the allegations in Furman's petition and asserting various affirmative defenses and certain other defenses.

Furman then moved for summary judgment, arguing that it was entitled to summary judgment as a matter of law on its breach-of-contract claim because res judicata barred the District from relitigating its obligation to pay the three reimbursement claims that had been adjudicated by the TCEQ in Furman's favor. Furman explained that its "lawsuit involve[d] the same claims that were at issue in the [TCEQ] proceeding," specifically, "whether the District [had] breached the reimbursement [agreement] with Furman by refusing to reimburse it $813,346.25 in costs for construction of the water pump station, $138,434.77 for developer advances, and $265,124.46 in mowing maintenance expenses."

In its response to Furman's summary-judgment motion, the District maintained that the TCEQ Order "d[id] not make any finding on the elements of [Furman's] breach[-]of[-]contract claim[] under Texas law." Further, the District pointed out that "the TCEQ Order d[id] not award any damages to Furman," and "specifically decline[d] to award damages by denying 'any other requests for general

or specific relief.'" Thus, according to the District, "the TCEQ Order [wa]s not a final judgment on the merits of Furman's breach[-]of[-]contract claim."

The District also argued that res judicata did not bar it from contesting Furman's breach-of-contract claim because "the TCEQ d[id] not have jurisdiction to decide a contract dispute." The District observed that no statute or regulation "direct[ed] the TCEQ to determine a breach[-]of[-]contract claim." Instead, in determining whether reimbursement was proper, the TCEQ was to "consider suitability, necessity, reasonableness of the cost, and economic viability,"[9] which were "public interest factors" that were "not at issue in a breach[-]of[-]contract claim."[10]

In its reply to the District's response, Furman noted that "[t]he TCEQ[] Order ma[de] numerous findings about the terms of the parties' agreement" and found that the District had "erred in excluding three categories of costs from the bond application," which was equivalent to a finding that the District had breached the reimbursement agreement. The TCEQ Order also "identifie[d] the amount of damages Furman suffered for each category" of cost. Thus, according to Furman, the TCEQ Order "addresse[d] all necessary elements to establish" that the District

---

[9] *See* 30 TEX. ADMIN. CODE § 293.180(c)(2) (Tex. Comm'n on Envtl. Quality, Appeal of Decision of the Board of Municipal Utility District Regarding Facilities Constructed for District).

[10] The District did not raise any of its affirmative defenses in its summary-judgment response.

failed to comply with the reimbursement agreement and that Furman was "entitled to damages in the amounts" that the TCEQ found the District had "wrongfully excluded." Whether "[t]he TCEQ actually awarded damages," Furman maintained, "ha[d] no bearing on whether it decided all necessary elements of a contract dispute." And even "though the TCEQ did not award damages, its findings as to the amount of damages" that the District owed Furman under the reimbursement agreement "[we]re res judicata."[11]

The trial court granted Furman summary judgment on its breach-of-contract claim and entered a judgment awarding Furman $1,216,905.48 in damages plus pre- and post-judgment interest. The District then moved for reconsideration and a new trial, reiterating its arguments that the TCEQ Order was not a final judgment on the merits of Furman's breach-of-contract claim and that the TCEQ lacked "the authority to determine a breach[-]of[-]contract claim." The trial court denied the District's motion.

**Standard of Review**

We review a trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge

---

[11] The District also filed a surreply.

12

every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. When, as here, the trial court does not specify the grounds on which it granted summary judgment, we must affirm if any of the summary-judgment grounds are meritorious. *See Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

To prevail on a matter-of-law summary-judgment motion, a movant has the burden of establishing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for a matter-of-law summary judgment on its own claim, it must conclusively prove all essential elements of its cause of action. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Transcont'l Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

### Res Judicata

In its first, second, third, fourth, fifth, sixth, seventh, and ninth issues, the District argues that the trial court erred in granting summary judgment in favor of Furman on its breach-of-contract claim because Furman did not establish as a matter

of law that the TCEQ Order was a final judgment on the merits of Furman's breach-of-contract claim as required for res judicata to apply.

Res judicata is a generic term for the related concepts of claim preclusion (res judicata) and issue preclusion (collateral estoppel), and it must be pleaded as an affirmative defense.[12] TEX. R. CIV. P. 94; *Whallon v. City of Houston*, 462 S.W.3d 146, 155 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Barnes v. United Parcel Serv., Inc.*, 395 S.W.3d 165, 173 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see also Barr v. Resol. Tr. Corp.*, 837 S.W.2d 627, 628 (Tex. 1992); *Wilson v. Fleming*, 669 S.W.3d 450, 456 (Tex. App.—Houston [14th Dist.] 2021) (observing although federal courts refer to doctrines of claim preclusion and issue preclusion collectively as "res judicata," Texas courts generally refer to "collateral estoppel" when referencing and applying issue preclusion), *aff'd*, 694 S.W.3d 186 (Tex. 2024). Both res judicata and collateral estoppel may be used offensively to stop a defendant from relitigating claims or issues previously litigated. *Koval v. Henry Kirkland Contractors, Inc.*, No. 01-06-00067-CV, 2008 WL 458295, at *5 (Tex. App.—Houston [1st Dist.] Feb. 15, 2008, no pet.) (mem. op.); *see also Case*

---

[12]  The parties dispute whether Furman sought to apply res judicata or collateral estoppel to its breach-of-contract claim. This Court will not linger on whether one label is more proper than the other and will instead focus on whether Furman established as a matter of law that the TCEQ's adjudication of the administrative appeal in Furman's favor functions in a way that precludes the need for further litigation of Furman's breach-of-contract claim.

*Funding Network, LP. v. Anglo–Dutch Petroleum Int'l, Inc.*, 264 S.W.3d 38, 57 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Collateral estoppel can be applied offensively or defensively.").

Res judicata prevents the re-litigation of a claim or cause of action that has been finally adjudicated in a prior lawsuit. *Barr*, 837 S.W.2d at 628; *Barnes*, 395 S.W.3d at 173. For res judicata to apply, a party must show that: (1) there was a prior final judgment on the merits by a court of competent jurisdiction, (2) the parties in the second action are the same or in privity with those in the first action, and (3) the second action is based on claims that were or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008); *Barnes*, 395 S.W.3d at 173. Res judicata does not operate as a bar to litigation when the second claim could not have been raised in the previous litigation. *See Abbott Lab'ys v. Gravis*, 470 S.W.2d 639, 642 (Tex. 1971); *Barnes*, 395 S.W.3d at 173.

Collateral estoppel, or issue preclusion, bars the relitigation of identical issues of fact or law decided in a prior suit. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *Hassell Constr. Co. v. Springwoods Realty Co.*, No. 01-17-00822-CV, 2023 WL 2377488, at *12 (Tex. App.—Houston [1st Dist.] Mar. 7, 2023, pet. denied) (mem. op.). A party seeking to assert collateral estoppel must show that: (1) the issue of fact or law sought to be litigated in the second action was fully and fairly litigated in the first action, (2) those issues were essential to the

15

judgment in the first action, and (3) the party against whom the doctrine is asserted was a party or was in privity with a party in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994); *Hassell Constr. Co.*, 2023 WL 2377488, at *12.

Here, the District challenges the first and third elements of res judicata, asserting that the TCEQ was not a "court of competent jurisdiction" to adjudicate Furman's breach-of-contract claim, and thus, the breach-of-contract claim could not have been raised in the TCEQ proceeding. The District also asserts that the offensive use of res judicata is improper. We address each of these assertions in turn.

## A. TCEQ Jurisdiction

Issue preclusion "applies to administrative agency orders when the agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Turnage v. JPI Multifamily, Inc.*, 64 S.W.3d 614, 620 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *see also Estate of Howard*, 543 S.W.3d 397, 401 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *New Talk, Inc. v. Sw. Bell Tel. Co.*, 520 S.W.3d 637 (Tex. App.—Fort Worth 2017, no pet.).

As to the administrative proceeding at issue here, the administrative law judge determined that "Texas Water Code [section] 54.239 and 30 Texas Administrative Code [section] 293.180 afford[ed] Furman the right to appeal decisions made by the

[District's board of directors] involving the cost and purchase of facilities if it is aggrieved by such decisions." The administrative law judge noted that "[i]t [wa]s clear that the [District's board of directors] made decisions regarding what costs of facilities it purchased from Furman would be included in Bond Application No. 7, and that th[o]se decisions adversely affected Furman."

The District argues that the TCEQ Order "does not reflect a resolution of the parties' contractual dispute" because the TCEQ cannot award breach-of-contract damages.[13] But the TCEQ Order may have preclusive effect over the issues that the TCEQ did have the authority to adjudicate. The question, then is whether, after considering the TCEQ's findings on the issues that it could adjudicate, a genuine issue of material fact remains which would preclude summary judgment on Furman's breach-of-contract claim. *See Siegler*, 899 S.W.2d at 197; *Transcont'l Ins. Co.*, 321 S.W.3d at 691.

---

[13] *See* 30 TEX. ADMIN. CODE § 293.180(c)(4) ("[I]f the Commission finds that the district erred in its decision, it may direct the district to reimburse the petitioner(s) all or part of the deposit which the petitioner paid."). The District also asserts that the TCEQ and Furman both admitted that the TCEQ "ha[d] no authority to decide breach[-]of[-]contract claims." This assertion does not affect our inquiry because whether an administrative agency has the authority to make a particular decision is a question of law, whereas a judicial admission is an assertion of fact. *See In re Spooner*, 333 S.W.3d 759, 764 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding [mand. denied]).

**B.     Breach of Contract**

The District argues that the TCEQ Order has no preclusive effect because it does not address any of the elements of a breach-of-contract claim. The elements of a breach-of-contract claim are: (1) a valid contract, (2) the party suing to enforce the contract performed or tendered performance, (3) the other party failed to comply with the contract, and (4) the suing party was damaged as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018); *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.). "A breach occurs when a party fails or refuses to do something [it] has promised to do." *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

The District has not challenged the validity of the reimbursement agreement as a whole or the validity or meaning of the reimbursement agreement's provision under which it agreed to reimburse Furman for the "reimbursable share" of Furman's construction costs. This leaves the second, third and fourth elements of Furman's breach-of-contract claim to consider. *See Menchaca*, 545 S.W.3d at 501 n.21; *Thornton*, 355 S.W.3d at 316.

As to the second element—that Furman performed its obligations under the reimbursement agreement—the District complains that the TCEQ's findings that the facilities Furman built were "suitable, reasonable, and necessary" are not the same

18

as a finding of performance. We note that those findings were necessary to comply with applicable law. *See* 30 TEX. ADMIN. CODE § 293.180(c)(2) (Tex. Comm'n on Envtl. Quality, Appeal of a Decision of the Board of Municipal Utility District Regarding Facilities Constructed for the District) (providing TCEQ should consider suitability, necessity, reasonableness of cost, and economic viability in rendering decisions). The TCEQ also concluded that if the District had submitted the costs of the facilities and maintenance expenses in Bond Application No. 7, they would have been "eligible for reimbursement with utility bond funds." The TCEQ would not have concluded that the costs were eligible for reimbursement had Furman not performed its obligations under the reimbursement agreement.

As to whether the TCEQ determined in its Order that the District failed to comply with the reimbursement agreement, the TCEQ concluded that the District "erred" in deciding "to exclude from Bond Application No. 7 reimbursement of $813,346.25 to Furman for the Pump Station," to "exclude from Bond Application No. 7 reimbursement of $138,434.77 to Furman for developer advances," and "to deduct $265,124.46 in Facilities maintenance expenses from Furman's reimbursement proceeds." The District complains that the TCEQ's conclusion that it erred in excluding these reimbursements is not a basis for damages because it is premised on the hypothetical approval by the TCEQ of "bonds in the amount Furman s[ought] if the District had agreed to apply for such amounts." The conclusion in

19

the TCEQ Order that the District erred in excluding the reimbursable funds, though, necessarily implies that the TCEQ would have approved such funds if the District had included them in Bond Application No. 7. *See id.* § 293.41(c) (Tex. Comm'n on Envtl. Quality, Approval of Projects and Issuance of Bonds) (TCEQ "has the statutory responsibility to approve projects relating to the issuance and sale of bonds for districts as defined in [Texas Water Code section] 49.001(1)"); *see also id.* § 293.44 (Tex. Comm'n on Envtl. Quality, Special Considerations) (detailing water district's authority to obtain financing through bond issuance and limits on such authority). The reimbursement agreement reflects the parties' understanding that the TCEQ has the last word about the District's authority to have a bond issued in order to reimburse a developer, requiring the District to "obtain approval" from the TCEQ "for the sale of [b]onds" for reimbursement and limiting reimbursement "to the maximum extent permitted" under TCEQ Rules.

Thus, the TCEQ's conclusion that the District erred in excluding the reimbursements sought by Furman effectively amounts to a conclusion that the District failed to comply with the reimbursement agreement.

As to whether Furman was damaged as a result of the District's breach of the reimbursement agreement, we note that the TCEQ Order in favor of Furman in its appeal is, at its core, a conclusion that Furman was "aggrieved" by the decisions of the District's board of directors "involving the cost and purchase of facilities." *See*

20

TEX. WATER CODE ANN. § 54.239; 30 TEX. ADMIN. CODE § 293.180. Further, the TCEQ determined the specific amounts that were owed to Furman under the reimbursement agreement.

## C.    Offensive Use of Res Judicata

The Texas Supreme Court has observed that applying res judicata to the administrative orders of certain administrative agencies "further[s] the public policy discouraging prolonged and piecemeal litigation." *Igal*, 250 S.W.3d at 86. The District warns of the possibility of a double recovery, but answers its own concern in stressing that the TCEQ lacks the authority to award damages.

The District also urges that we consider the fairness factors set forth in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979). In contrast to *Parklane Hosiery*, though, the District and Furman were both parties to the administrative appeal and in the trial court. The concerns raised in *Parklane Hosiery* thus do not apply here. *See id.* at 328.

In the reimbursement agreement, the parties acknowledged repeatedly that the TCEQ Rules governed their performance under it. The agreement's choice of law provision reinforced the importance of TCEQ oversight, requiring that the obligations set forth in the agreement be governed by Texas law and also expressly making them "subject to all rules, regulations and laws of any regulatory agency having jurisdiction, including the Rules of the [TCEQ]." The District has not

21

identified any public policy or other reason for refusing to apply res judicata in this case, and given the overarching importance of TCEQ regulation in the subject matter and the reimbursement agreement, we find none.

For these reasons, we hold that the trial court did not err in granting summary judgment in favor of Furman on its breach-of-contract claim based on res judicata.

We overrule the District's first, second, third, fourth, fifth, sixth, seventh, and ninth issues.[14]

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.

---

[14] Our disposition makes it unnecessary to reach the District's remaining issue. *See* TEX. R. APP. P. 47.1.